## J. Blaine Lewis *v.* Connecticut Gaming Policy Board et al.
### (14481)

Callahan, Borden, Berdon, Norcott and Katz, Js.

Argued October 30, 1992—decision released February 23, 1993

*William S. Rogers,* with whom was *Susan Quinn,* for the appellant (plaintiff).

*Richard M. Sheridan,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (defendants).

CALLAHAN, J. This appeal raises two procedural issues: (1) whether a Superior Court judge was prohibited from reviewing and reversing a ruling, made earlier in the same case by a coordinate judge, relating to a question of subject matter jurisdiction; and (2) whether the proceedings before an administrative agency terminating the employment of an appointed, unclassified permanent state employee who served as a unit head in the division of special revenue constituted a "contested case" under General Statutes § 4-166 (2). The plaintiff, J. Blaine Lewis, filed an administrative appeal in the Superior Court from a decision terminating the plaintiff's employment with the defendant division of special revenue.[1] The Superior Court, *Norko, J.,* dismissed the plaintiff's administrative appeal for lack of subject matter jurisdiction. The plaintiff appealed from the court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the Superior Court.

The following facts are relevant to this appeal. The plaintiff was employed by the defendant state depart-

---

[1] The defendants are the state gaming policy board, the state department of revenue services and its division of special revenue, and William V. Hickey, the executive director of that division.

ment of revenue services in its division of special revenue (division). For nine years, until 1989, the plaintiff served as the head of the lottery unit of the division. The division works in cooperation with the defendant gaming policy board (board) to implement and administer all Connecticut lottery games. The plaintiff's immediate supervisor was the defendant William V. Hickey, executive director of the division.

On May 16, 1989, the executive director informed the plaintiff that the division was changing one of the lottery games, LOTTO, from a game consisting of forty numbers to one consisting of forty-four numbers. The executive director ordered the plaintiff to design and implement the changed format and to prepare a favorable presentation of the changed format to the board. The plaintiff refused to comply with the executive director's order and requested that the executive director withdraw the order. The executive director thereupon placed the plaintiff on paid leave of absence. On May 22, 1989, the plaintiff was notified that a "pre-disciplinary decision hearing" would be conducted before the executive director on May 24, 1989, pursuant to the division's personnel procedure No. 1, to discuss the plaintiff's refusal to comply with the executive director's order. The executive director himself presided at the "pre-disciplinary decision hearing" and terminated the plaintiff's employment for disobeying his order.

Thereafter, the executive director requested that the board add the matter of his decision to terminate the plaintiff's employment to its agenda for its next executive session. At an executive session of the board on May 26, 1989, the plaintiff appeared, accompanied by counsel, to testify on his own behalf. At the conclusion of a summary proceeding, the board voted in favor of a resolution to approve the executive director's decision to terminate the plaintiff's employment.

On August 17, 1989, the plaintiff appealed the order of termination to the Superior Court pursuant to General Statutes § 4-183 (a) of the Uniform Administrative Procedure Act (UAPA).[2] The defendants[3] filed a motion to dismiss the plaintiff's action based on a lack of subject matter jurisdiction, claiming that the plaintiff had not appealed from a "contested case" as defined in § 4-166 (2).[4] The trial court, *Freed, J.,* denied the defendants' motion. The defendants then filed an answer to the plaintiff's complaint in which they alleged as a special defense that the court lacked subject matter jurisdiction.

The plaintiff's appeal was assigned to Judge Raymond R. Norko, who heard argument on both the merits of, and the court's subject matter jurisdiction over, the appeal. The court, *Norko, J.,* dismissed the plaintiff's appeal, concluding that the court was without subject matter jurisdiction because the proceedings surrounding the plaintiff's termination from the division did not involve a "contested case" as required under the UAPA. This appeal followed.

The plaintiff argues on appeal to this court that the trial court, *Norko, J.,* improperly: (1) reviewed and reversed a decision of a coordinate court; (2) concluded that the proceedings surrounding the plaintiff's termination from employment with the division did not constitute a contested case under § 4-166 (2) from which

---

[2] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the superior court . . . ."

[3] See footnote 1.

[4] General Statutes § 4-166 (2) provides: " 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 or hearings referred to in section 4-168 . . . ."

he had a right to appeal; and (3) failed to address whether the plaintiff's right to employment as secured by General Statutes §§ 31-51m and 31-51q was sufficient to qualify the termination proceedings for "contested case" status. We conclude that Judge Norko properly reviewed the prior ruling by a coordinate judge on the issue of the court's subject matter jurisdiction over the plaintiff's appeal and the court properly dismissed the plaintiff's appeal because the appeal had not been taken from a decision in a contested case.

I

The plaintiff first claims that Judge Norko improperly reviewed and reversed the decision of Judge Freed on the issue of whether the proceedings terminating the plaintiff's employment with the division constituted a contested case. The plaintiff argues that, under the doctrine of the law of the case, the previous ruling was binding on Judge Norko and there was no cause for review or reversal of that ruling. We do not agree.

"The law of the case . . . expresses the practice of judges generally to refuse to reopen what has been decided and it is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided . . . ." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982). "Nevertheless, if the case comes before [a subsequent judge] regularly and he becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." Id., 100.

On November 29, 1990, Judge Freed addressed the court's subject matter jurisdiction over the plaintiff's appeal pursuant to the defendants' motion to dismiss

and concluded that the plaintiff's appeal presented a contested case under § 4-166 (2). Thereafter, Judge Norko, on November 14, 1991, again addressed the same issue after it had been reasserted as a special defense in the defendants' answer to the plaintiff's complaint. Judge Norko recognized that, although the law of the case doctrine ordinarily restrains a judge's review of a prior ruling in the same case by a coordinate judge, the doctrine did not prevent him from revisiting the issue of the court's subject matter jurisdiction.

It is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. *Sasso* v. *Aleshin,* 197 Conn. 87, 89, 495 A.2d 1066 (1985). Practice Book § 145 provides: "Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second), Judgments § 11." *Craig* v. *Bronson,* 202 Conn. 93, 101, 520 A.2d 155 (1987). " '[A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . .' " *Neyland* v. *Board of Education,* 195 Conn. 174, 181, 487 A.2d 181 (1985), quoting *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368, 379, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981). "The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention." (Internal quotation marks omitted.) *Doe* v. *Heintz,* 204 Conn. 17, 35, 526 A.2d 1318 (1987); *Woodmont Assn.* v. *Milford,* 85 Conn. 517, 524, 84 A. 307 (1912). "The requirement of subject matter jurisdiction cannot be waived by any party and can be raised

at any stage in the proceedings. . . . If at any point, it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed." *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 679 n.1, 485 A.2d 1272 (1984); see also Practice Book § 145.

The obligation of Judge Norko to revisit a claim of lack of jurisdiction made in the defendants' answer to the plaintiff's complaint tempers the application of the doctrine of the law of the case. Although Judge Norko's review of the first ruling was not predicated on the existence of new evidence or a change in the law since the first ruling, it revealed a conviction on his part that the prior decision was clearly erroneous. *Breen* v. *Phelps,* supra, 100. Furthermore, because we determine herein that the initial ruling on the issue of the court's subject matter jurisdiction was in fact incorrect, the plaintiff's first claim is without merit.[5]

## II

The plaintiff next claims that the trial court incorrectly concluded that the termination proceedings before the administrative agency did not constitute a "contested case" under General Statutes § 4-166 (2), and, as a consequence, the court lacked subject matter jurisdiction over the plaintiff's appeal. We do not agree.

There is no absolute right of appeal to the courts from a decision of an administrative agency. See *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities,* 202 Conn. 150, 154, 520 A.2d 186 (1987). "The UAPA grants the Superior Court jurisdiction over appeals of agency decisions only in certain

[5] Ultimately, in an appeal to this court, "where views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, the important question is not whether there was a difference but which view was right." (Internal quotation marks omitted.) *Barnes* v. *Schlein,* 192 Conn. 732, 734, 473 A.2d 1221 (1984).

limited and well delineated circumstances." *New England Dairies, Inc.* v. *Commissioner of Agriculture,* 221 Conn. 422, 427, 604 A.2d 810 (1992). Judicial review of an administrative decision is governed by General Statutes § 4-183 (a) of the UAPA, which provides that "[a] person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the superior court . . . ." A final decision is defined in § 4-166 (3) (A) as "the agency determination in a *contested case* . . . ." (Emphasis added.)

A "contested case" is defined in § 4-166 (2) as "a proceeding . . . in which the legal rights, duties or privileges of a party are required *by statute* to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ." (Emphasis added). Not every matter or issue determined by an agency qualifies for contested case status. See, e.g., *New England Dairies, Inc.* v. *Commissioner of Agriculture,* supra. "[W]e have determined that even in a case where a hearing is 'in fact held,' in order to constitute a contested case, a party to that hearing must have enjoyed a statutory right to have his 'legal rights, duties or privileges' determined by that agency holding the hearing. . . . In the instance where no party to a hearing enjoys such a right, the Superior Court is without jurisdiction over any appeal from that agency's determination." (Citations omitted.) Id.

The plaintiff asserts that he possessed a legal right or privilege in his continued employment with the division and that the defendants were required by statute *or regulation* to determine that legal right or privilege only after providing an opportunity for a meaningful hearing. Even if the plaintiff did have a legal right or privilege in continued employment with the division, and even if that right or privilege was terminated in

a deficient proceeding before the executive director and the board, the plaintiff still cannot prevail unless the defendants were *statutorily* required to determine the plaintiff's legal right or privilege to his continued employment in a hearing. See, e.g., *New England Dairies, Inc.* v. *Commissioner of Agriculture,* supra, 429 (commissioner of agriculture was not required by statute to determine a milk dealer's right to a license after an opportunity for a hearing); *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 471, 378 A.2d 547 (1977) (commission was not required by statute to provide an opportunity for a hearing prior to denying a state employee's written request to change retirement plans); *Taylor* v. *Robinson,* 171 Conn. 691, 697, 372 A.2d 102 (1976) (parole board had no statutory obligation to determine if a prisoner should be released from parole).

To ascertain whether a statute requires an agency to determine the legal rights, privileges or duties of a party, we need to examine all the statutory provisions that govern the activities of the particular agency or agencies in question. *Rybinski* v. *State Employees' Retirement Commission,* supra, 471. Chapter 226 of the General Statutes, §§ 12-557 through 12-578, controls the activities of the division of special revenue and the gaming policy board. The division works in cooperation with the board to implement and administer all legalized gambling in Connecticut. General Statutes § 12-557e. The executive director of the division, under General Statutes § 12-562 (a), "shall have power generally to do whatever is reasonably necessary for the carrying out of the intent of this chapter . . . ."

Before both Judges Freed and Norko, the plaintiff asserted that the statutory requirement obligating the defendants to determine the plaintiff's legal right or privilege in his continued employment is found in General Statutes § 12-559, which provides in relevant part

that "the executive director shall, with the advice and consent of the board, appoint unit heads for each of the units created within the division, who shall be exempt from classified service." The plaintiff reasoned that, because § 12-559 requires that the executive director appoint unit heads with the advice and consent of the board, it implies that the executive director, with the advice and consent of the board, must determine whether to continue to employ the plaintiff as a unit head. Judge Freed agreed with the plaintiff's construction of § 12-559. Judge Norko, however, found that the text of § 12-559 neither states nor suggests that the statutory right to appoint unit heads creates a corresponding *statutory* duty to determine, in any type of proceeding, the right or privilege of a unit head to continue state employment. Judge Norko concluded that if the legislature had intended that the defendants were to be statutorily obligated to determine a unit head's legal right or privilege in continued employment in a hearing, it would have so provided. We agree with this reasoning.

The statutes applicable to this case imply, if anything, that the legislature intended that the executive director *not* be required to determine the legal rights or privileges of unit heads in their continued employment after an opportunity for a hearing. Section 12-562 vests in the executive director "power generally to do whatever is reasonably necessary for the carrying out of the intent of this chapter . . . ." Moreover, unit heads in the division of special revenue, as appointed officials, serve "at the pleasure of" the executive director. General Statutes § 4-1a.[6] The fact that the plaintiff served

---

[6] General Statutes § 4-1a provides: "Unless otherwise provided by law, any appointed official of the state . . . shall serve at the pleasure of the person or body authorized to make the appointment but no longer than the term of office of such appointing authority or until such official's successor is appointed and qualified, whichever is longer."

"at the pleasure of" the executive director indicates that the executive director was not statutorily required to determine the plaintiff's legal right or privilege in continued employment after providing an opportunity for a hearing. Consequently, in the absence of an express statutory requirement obligating the defendants to determine the plaintiff's legal right or privilege to continued employment, the plaintiff's claim fails.

The plaintiff also argues that the termination by the defendants of his employment with the division qualified as a contested case because an agency personnel policy required that the defendants determine the plaintiff's legal right or privilege in continued employment subsequent to his having had a meaningful opportunity to be heard.[7] In support of his argument, the plaintiff suggests that the test for determining whether a proceeding is a contested case was expanded in *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 212, 567 A.2d 1156 (1989), wherein the court stated that "[t]o qualify a proceeding as a 'contested case' under § 4-166 (2) and, thus, to be entitled to a 'hearing,' a party must have a statutory or *regulatory* right to be heard by the agency."[8] (Emphasis added.)

---

[7] Personnel procedure No. 1, applicable to permanent state employees, of the Pre-disciplinary Hearing Procedures of the Division of Special Revenue provides in relevant part: "Prior to the decision to terminate . . . a permanent employee . . . the employee shall receive notice and be provided an opportunity to be heard." General Statutes § 5-196 (s) defines a permanent state employee as "an employee holding a position in the classified service under a permanent appointment or an employee holding a position in unclassified service who has served in such position for a period of more than six months . . . ." The plaintiff is a permanent state employee.

[8] Because we conclude that the proceedings terminating the plaintiff's employment will not qualify for contested case status under General Statutes § 4-166 (2) unless the defendants were statutorily required to determine the plaintiff's legal interest, it is unnecessary for us to address whether the personnel policy No. 1 is a regulation. Neither an agency regulation, policy or rule is sufficient to qualify a proceeding for contested case status under the UAPA.

The plaintiff misconstrues *All Brand Importers, Inc.* The court, in *All Brand Importers, Inc.,* cited *Herman v. Division of Special Revenue,* 193 Conn. 379, 477 A.2d 119 (1984), in support of the above proposition. In *Herman,* we stated: "In order for a proceeding to qualify as a 'hearing' for the purposes of [a contested case], the party must have a statutory or *regulatory* right to be heard by the agency." (Emphasis added.) Id., 383. In *Herman,* the division of special revenue granted a hearing at the request of a plaintiff who wished to be reinstated as a jai alai patron after he had been ejected from the Milford Jai Alai Fronton. The division stated that, although it would provide a hearing, it was not required to do so by statute or regulation. Id., 380. At the hearing, the plaintiff asked that he be reinstated, and his request was denied. On appeal to this court, the plaintiff claimed that the hearing regarding his reinstatement was a "contested case" under § 4-166 (2) because it was a hearing that was in fact held before the division. In reviewing this claim, the court in *Herman* found that a "hearing" had taken place; it then addressed the issue of whether the fact that a hearing had actually been held established the proceedings as a contested case under the UAPA. We concluded that because the division was not *"statutorily required* to determine the eligibility for reinstatement of an ejected patron . . . there was no contested case to which the provisions of the UAPA might apply." (Emphasis added.) Id., 386–87. The reference in *Herman,* therefore, to a regulatory requirement for a hearing was dictum.

In light of *Herman,* whether a hearing qualifies for contested case status under § 4-166 (2) is a different inquiry from whether a hearing is required by a regulation to be held. Although an agency rule, policy or regulation may require a hearing, that hearing will not qualify the proceedings as a contested case unless the

agency is *statutorily* required to determine the legal rights or privileges of the party aggrieved in that proceeding.

Neither *Herman* nor *All Brand Importers, Inc.,* stands for the proposition that a regulation simply requiring an agency to hold a hearing will qualify a proceeding for "contested case" status under § 4-166 (2). In *Herman,* upon which *All Brand Importers, Inc.,* is based, we stated: "The test for determining contested case status has been well established and requires an inquiry into three criteria, to wit: (1) whether a legal right, duty or privilege is at issue, (2) and is *statutorily* required to be determined by the agency, (3) through an opportunity for [a] hearing or in which a hearing is in fact held." (Emphasis added.) *Herman* v. *Division of Special Revenue,* supra, 382. Under this test, although agency regulations, rules or policies may require the agency to hold a hearing, that does not constitute a matter as a "contested case" under § 4-166 (2) unless the plaintiff's rights or privileges are "statutorily" required to be determined by the agency. If the plaintiff's rights or privileges are not "statutorily" required to be determined by the agency, a "contested case" does not exist and a plaintiff would have no right to appeal pursuant to § 4-183 (a).

The plaintiff asserts that in *All Brand Importers, Inc.,* we implied that a regulation requiring an agency to hold a hearing is sufficient to qualify the proceeding for "contested case" status under § 4-166 (2). We find nothing in *All Brand Importers, Inc.,* that justifies interpreting the clear language of § 4-166 (2) to include agency regulations necessitating a hearing as a source of authority for requiring that an agency must statutorily determine a party's legal rights or privileges. Even where a hearing was in fact held we have found that the proceeding did not constitute a "contested case" because there was no *statutory* mandate

that rights or privileges be determined. *New England Dairies, Inc.* v. *Commissioner of Agriculture,* supra, 427. "[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987). "The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say." *Burnham* v. *Administrator,* 184 Conn. 317, 325, 439 A.2d 1008 (1981); *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 549–50, 494 A.2d 564 (1985).

The "required by statute" language in § 4-166 (2), if construed according to its commonly approved usage, can only mean that before a proceeding qualifies as a contested case, an agency must be obligated by an act promulgated by the legislature to determine the legal rights, duties or privileges of a party. See General Statutes § 1-1. A proceeding in which only an agency rule, regulation or policy requires a determination of rights after a hearing will not qualify.

Not only the text, but also the legislative history of § 4-166 (2) supports our reading of the statute. When first enacted in 1973, § 4-166 (2) contained the language "required by law" rather than "required by statute." The phrase "required by law" is found in the 1961 Model State Administrative Procedure Act, and is also found in the statutes of most other jurisdictions that have adopted the model act. Model State Administrative Procedure Act (1961) § 1 (2), 14 Uniform Laws Annotated (1980) 357; 1 F. Cooper, State Administrative Law (1965) p. 120. The term "law" as contained in the contested case provisions in other jurisdictions has a broader meaning than the term "statute," and has been interpreted in other jurisdictions to refer

generically to any species of law, including constitutional provisions, and agency rules, regulations and policies. See, e.g., *Burgess* v. *Softich,* 167 Mont. 70, 77, 535 P.2d 178 (1975) (interpreting the "required by law" language in the contested case provision in Mont. Code Ann. § 82-4202 [3] [1975] to include an agency rule). In 1973, the Connecticut legislature amended § 4-166 (2) and replaced the "required by law" language with "required by statute." Public Acts 1973, No. 73-620, § 2. By amending § 4-166 (2) to replace the phrase, "required by law," with the phrase, "required by statute," the legislature clearly manifested an intent that only a determination of rights, duties and privileges required by statute would constitute a basis for a "contested case."

The interpretation ascribed to the "required by statute" language contained in other state and federal administrative procedure provisions similar to § 4-166 (2) is consistent with our reading of Connecticut's contested case provision. For example, Iowa's contested case provision states that a " '[c]ontested case' means a proceeding . . . in which the legal rights, duties or privileges of a party are required by Constitution or *statute* to be determined by an agency after an opportunity for an evidentiary hearing." (Emphasis added.) Iowa Code Ann. § 17A.2 (2) (1989). The Iowa Supreme Court has consistently followed the analysis of Iowa's contested case provision set forth in Professor Arthur E. Bonfield's article, "The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act," 63 Iowa L. Rev. 285 (1977). See, e.g., *Allegre* v. *State Board of Regents,* 349 N.W.2d 112, 114 (Iowa 1984); *Polk County* v. *State Appeal Board,* 330 N.W.2d 267, 276 (Iowa 1983). In his article, Professor Bonfield wrote that in order to be a "contested case" the rights and privileges of a party must be required, under the Iowa Code, to be

determined by "Constitution or statute," and that a right or privilege conferred by agency rule or policy would not suffice. A. Bonfield, supra, 308. He based his conclusion on the plain meaning of the specific language used, and on the fact that the language was purposely chosen to accomplish that result.[9] Id.

Professor Bonfield, a recognized authority on state administrative law and the author of the treatise, State Administrative Rule Making (1986), had recommended to a subcommittee of the Iowa General Assembly studying the state administrative procedure act that the phrase "required by Constitution or statute" replace the "required by law" language contained in the 1961 Model State Administrative Procedure Act from which the Iowa Administrative Procedure Act had originally drawn its language. The effect of this recommendation was to exclude agency rules, regulations or policies as sources of law sufficient to render a proceeding a contested case. A. Bonfield, supra, 63 Iowa L. Rev. 304–10.

Moreover, the federal Administrative Procedure Act's provision regarding formal adjudications; 5 U.S.C. § 554 (a) (1992); contains language similar to the "required by statute" language in § 4-166 (2) and has been interpreted to exclude those adjudications that are required only by agency rule. The federal statute states that the provisions pertaining to formal adjudication apply "in every case of adjudication *required by statute* to be determined on the record after opportunity for an agency hearing." (Emphasis added.) 5 U.S.C. § 554 (a) (1992). The United States Supreme Court has stated: "We think that the limitation to hearings 'required by statute' in . . . the Administrative Procedure Act exempts from that section's application only

---

[9] Connecticut does not include "required by constitution" as a basis for a "contested case" under the UAPA.

those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion. We . . . think the limiting words . . . exempt hearings of less than statutory authority . . . ." *Wong Yang Sung* v. *McGrath,* 339 U.S. 33, 50, 70 S. Ct. 445, 94 L. Ed. 616, modified, 339 U.S. 908, 70 S. Ct. 564, 94 L. Ed. 1336 (1950).

Although § 4-166 (2) excludes a large class of agency decision-making from contested case status, it nonetheless provides that the legislature, rather than the agencies, has the primary and continuing role in deciding which class of proceedings should enjoy the full panoply of procedural protections afforded by the UAPA to contested cases, including the right to appellate review by the judiciary.[10] Deciding which class of cases qualifies for contested case status reflects an important matter of public policy and "the primary responsibility for formulating public policy must remain with the legislature." *State* v. *Whiteman,* 204 Conn. 98, 103, 526 A.2d 869 (1987); see *Kellems* v. *Brown,* 163 Conn. 478, 491, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973).

On the basis of a plain reading of § 4-166 (2), which clearly manifests a legislative intention to limit contested case status to a proceeding in which an agency is statutorily required to determine a party's legal rights or privileges, we conclude that the proceeding terminating the plaintiff's employment was not a contested case. Consequently, Judge Norko properly dismissed the plaintiff's administrative appeal for lack of subject matter jurisdiction.

---

[10] Although the plaintiff may not appeal to the Superior Court from the administrative decision terminating his employment under the UAPA, he is not without recourse to protect any claimed unconstitutional deprivation or impairment of a property interest. The plaintiff has in fact filed a civil action in the United States District Court for the District of Connecticut, seeking damages against the defendants based upon alleged violations of 42 U.S.C. § 1983.

## III

Finally, the plaintiff claims that General Statutes §§ 31-51m and 31-51q serve as statutory authority for the purpose of the definition of "contested case" in General Statutes § 4-166 (2). The plaintiff argues that §§ 31-51m and 31-51q require that the agency determine the plaintiff's legal interest in continued employment with the division after an opportunity for a meaningful hearing.[11] The record below does not indicate that the plaintiff ever advanced such a claim to either Judge Norko or Judge Freed and neither mem-

---

[11] General Statutes § 31-51m provides in relevant part: "(b) No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action. No municipal employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, to a public body concerning the unethical practices, mismanagement or abuse of authority by such employer. The provisions of this subsection shall not be applicable when the employee knows that such report is false.

"(c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by the court. Any employee found to have knowingly made a false report shall be subject to disciplinary action by his employer up to and including dismissal."

General Statutes § 31-51q provides in relevant part: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exer-

orandum of decision addresses this claim. The complaint filed by the plaintiff merely cited § 31-51q and stated that the termination proceedings were in violation of that statute.

Even if we were to review this final claim, it is clear that the plaintiff's reliance on these statutes to mandate an administrative appeal is misplaced. Sections 31-51m and 31-51q create causes of action enforceable in Superior Court to protect employees from illegal retaliatory action. See, e.g., *Skinner* v. *Angliker,* 211 Conn. 370, 559 A.2d 701 (1989). There is nothing in either statute that suggests that an agency is required to determine a party's legal right or privilege to public employment after an opportunity for an administrative hearing.

The judgment of the trial court, *Norko, J.,* is affirmed.

In this opinion the other justices concurred.

cise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."