[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a Final Decision and Order of the Director of the Bureau of Rehabilitation Services[1] ("BRS" or "agency") reversing in part and accepting in part a recommended decision of its fair hearing office. The plaintiff sought financial support for her last year of graduate school at Yale University and a variety of vocational skill development and support services designed to ameliorate disability related problems.
A fair hearing was held at the BRS New Haven office on December 15, 1992; February 10, and 11, 1993; March 26, 1993; and April 21, 1993. The hearing Officer issued a recommended decision and order on October 4, 1993. On October 18, 1993, the Director of BRS gave notice of his intent to review the Hearing Officer's decision, pursuant to 34 C.F.R. § 361.48 and Conn. State Agency Regs. 10-102-21j. On February 4, 1994, the Director issued a decision accepting the Hearing Officer's recommended decision to the extent that it upheld BRS's denial CT Page 8943 of services and reversing the Hearing Officer's decision ordering BRS to provide tuition assistance.
The facts show that the plaintiff applied for services from BRS[2], in August 1990, following completion of two semesters of study in the Masters' program in Public Health at the Yale Medical School.
She initially sought assistance related to her learning disability ("LD"), specifically a computer with a voice feedback option, various software suited to her needs and her disability, and tutoring in Spanish and French.
At the time of her application for services, she was learning disabled, and she had a tremendous amount of difficulty putting material into written form, in organizing and sequencing material, and difficulty with short term memory. She was found eligible for services by BRS and found to be severely disabled, which entitled her to priority in the provision of services. On April 13, 1991, she requested specific services: a computer, job placement services and tutoring. On April 23, 1991 the BRS informed the plaintiff that it was under a spending freeze due to state budgetary problems, and that no services could be purchased for her at that time.
On May 10, 1991, the plaintiff and the BRS prepared an Individualized Written Rehabilitation Program ("IWRP") in accordance with BRS Counselor's Manual, Sec. 2-4-7. The plaintiff's vocational goal was to be a "public health worker' and as intermediate objectives, "1. To obtain Master's in Public Health through Yale University," to be funded by "student loans," and "2. To determine appropriateness of computer purchase," to be funded by "BRS."
During 1991 the plaintiff received some funding and the BRS provided a computer and peripheral equipment. In November 1991 Ms. Toise was awarded the degree of Masters in Public Health from the Yale Medical School, with distinction, with a concentration in International and Preventive Health.
In February 1992, the plaintiff had difficulties finding a job through the agency because: [she] "has attained a higher level of education and is seeking a higher level of employment, than most clients of the agency. Most of our CT Page 8944 placement contacts are geared for different types of employment." In March 1992 the plaintiff received tutoring in Spanish language and was given Spanish books. She was not, however, supplied with Spanish language computer software as requested. Ms. Toise had also requested French language computer software, which was also not provided.
In June 1992 the plaintiff brought various strategies to the attention of the BRS which might assist her in locating appropriate employment. The recommendations were:
a. individual career counseling to determine and develop goals;
b. an experiential training workshop called Lifespring;
c. a pre-organized time planner agenda, such as the Franklin Planner, with audio training cassettes;
d. "Train the Trainer" course through American Society for Training and Development;
e. Dale Carnegie course for professional speaking skills;
f. video courses at Media Art Center of New Haven;
g. language tutorial in French, as well as Spanish, at advanced level;
h. enrollment in resume banks in public health field;
i. maintenance allowance to meet living expenses during job search.
In June 1992 the BRS approved the purchase of the Franklin Planner and the contracted services of a professional career/placement counselor was approved. The request for payment of the costs of the Yale graduate program was denied, along with the Lifespring program, the Dale Carnegie course, additional training in video production skills and further tutoring in Spanish and French languages. CT Page 8945
Based upon these difficult individual decisions of the BRS, the plaintiff requested a fair hearing in August of 1992. The fair hearing officer in a thorough opinion upheld the BRS denial of the Lifespring program, Train and Trainer and video production skills. (. . . it does not appear to be related to remediating her learning disability . . .). The denial of language tutoring in Spanish and French was upheld.
In the plaintiff's quest for tutoring assistance, the fair hearing officer found that the BRS failed to comply with its duty to inform her as to what services were available. Based upon findings that a master's degree in Public Health was necessary to achieve the plaintiff's vocational goal, the officer ordered reimbursement, but not at the Yale rates but comparable to University of Connecticut.[3]
On October 4, 1993, the Hearing Officer submitted her recommended Decision and Order, including findings of fact, conclusions of law and rationale to the BRS. On October 18, 1993, the Director of the BRS gave notice of his intention to review the Hearing Officer's recommended Decision and Order pursuant to 34 C.F.R. § 361.48 and § 10-102-21(j) of the Regs. Conn. State Agency.
On February 4, 1994 the Director of the BRS reversed the Fair hearing Officer and found that the BRS did not have to make payments for the plaintiff's Spring Semester of 1991. "It is contrary to federal and state law, including policy." The Director upheld the rest of the Fair hearing Officer's decision.
The defendant in her answer has raised the issue of whether this court has jurisdiction over this administrative appeal because no state statutory right to an administrative hearing exists. Further, the defendant claims that the court lacks subject matter jurisdiction because the hearing below was not a contested case as set forth in subsection (2) of Conn. Gen. Stat. § 4-166.
"It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." Gurliacci v. Mayor, 218 Conn. 531 (1992). "[J]urisdiction of the subject matter is a question of law and cannot be waived or conferred by consent. . . ." In reJudicial Inquiry No. 85-01, 221 Conn. 525, 629, 605 A.2d 545
CT Page 8946 (1992). "Moreover, whenever a court discovers it has no jurisdiction, it is bound to dismiss the case, without regard to previous rulings." Id., 629.
"Appeals from administrative agencies exist only under statutory authority." Botchis v. Aronson, 4 Conn. L. Rptr. 682, 6 CSCR 701 (1991) (Axelrod, J.), citing Tarnopol v. Connecticut SitingCouncil, 212 Conn. 157, 163, 561 A.2d 931 (1989), see also 2 Am.Jur.2d Administrative Law § 421 (1964) (At the state level, many courts maintain that there is no inherent right to appeal from a judgment rendered in an administrative adjudication, and that the right of judicial review must be expressly conferred by statute or the Constitution).
"Judicial review of an administrative decision is governed by General Statutes § 4-183 (a) of the UAPA, which provides that `[a] person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the superior court. . . .'" Lewis v. Gaming PolicyBoard, 224 Conn. 693, 700, 620 A.2d 789 (1993). But see, 2 Am.Jur.2d Administrative Law § 424 (1964) (the Administrative Procedure Act does not afford an implied grant to subject matter jurisdiction authorizing judicial review of agency action.) A "final decision" is defined in General Statutes § 4-166 (3)(A) as "the agency determination in a contested case." In turn, a "contested case" is defined in General Statutes § 4-166 (2) as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held. . . ."
"Not every matter or issue determined by an agency qualifies for contested case status." Lewis, supra, 224 Conn. 700, see also, Summit Hydropower Partnership v. Commissioner ofEnvironmental Protection, 226 Conn. 792, 800, 629 A.2d 367
(1993) (the statutory requirement that an appeal to the Superior Court may be taken only from a contested case as defined in [General Statutes] § 4-166 (2) is an obvious indicator that the legislature did not intend to authorize a right of appeal to the Superior Court from every determination of an administrative agency.)
"[W]e have determined that even in a case where a hearing is `in fact held,' in order to constitute a contested case, a party to that hearing must have enjoyed a statutory CT Page 8947 right to have his `legal rights, duties or privileges' determined by that agency holding the hearing. . . . In the instance where no party to a hearing enjoys such a right, the Superior Court is without jurisdiction over any appeal from that agency's determination.'" (citations omitted.) Lewis,
supra, 224 Conn. 700.
"To ascertain whether a statute requires an agency to determine the legal rights, privileges or duties of a party, we need to examine all the statutory provisions that govern the activities of the particular agency or agencies in questions." Id., 701.
In this instance, the regulations governing the BRS state in part:
 A Fair Hearing shall be granted after an Administrative Review which has resulted in a decision adverse to the client or applicant, and upon timely request for a Fair Hearing by the client or applicant or the duly authorized representative.
Regs., Conn. State Agencies § 10-102-21. However, it is well established that "although agency regulations, rules or policies may require the agency to hold a hearing, that does not constitute a matter as a `contested case' under [General statutes] § 4-166 (2) unless the plaintiff's rights or privileges are `statutorily' required to be determined by the agency." Lewis, supra, 224 Conn. 705, citing Herman v.Division of Special Revenue, 193 Conn. 379, 477 A.2d 119
(1984). "The `required by statute' language in [General statutes] § 4-166 (2), if construed according to its commonly approved usage, can only mean that before a proceeding qualifies as a contested case, an agency must be obligated by an act promulgated by the legislature to determine the legal rights, duties or privileges of a party. . . . A proceeding in which only an agency rule, regulation or policy requires a determination of rights after a hearing will not qualify." Id., 706.
Chapter 318q of the General Statutes §§ 17b-60 through 17b-74, controls the activities of the department of social services with regard to hearing procedures within that department. General statutes § 17b-69 (formerly General Statutes § 17-2a) states in part: CT Page 8948
 An aggrieved person authorized by law to request a fair hearing on a decision of the commissioner of social services . . . may make application for such hearing in writing over his signature to the commissioner and shall state in such application in simple language the reasons why he claims to be aggrieved. Such application shall be mailed to the commissioner within sixty days after the rendition of such decision. (Emphasis added.)
General Statutes § 17b-61 (a) (formerly General Statutes § 17-2b) states in part:
 Not later than sixty days after such hearing, or three business days if the hearing concerns a denial of or failure to provide emergency housing, the commissioner or his designated hearing officer shall render a final decision based upon all the evidence introduced before him . . . provided final definitive administrative action shall be taken by the commissioner or his designee within ninety days after the request of such hearing pursuant to section 17b-60. (Emphasis added).
These statutes make clear that the only persons authorized by law to request a fair hearing are persons aggrieved by a decision of the commissioner or his designee. Nothing in the language of these statutes indicate an intent by the legislature to abrogate the independent role of the director of rehabilitation services in reviewing the eligibility of applicants pursuant to Reg., Conn. State Agencies § 10-101-21.
A review of the record indicates that the hearing which was requested before the Director of BRS was done so in accordance with a state regulatory provision. See Reg. Conn. State Agencies § 10-102-21. Further, a review of the general statutory provisions applicable to the DHR and its successor agency DSS authorize an appeal by a person "who is aggrieved by a decision of the commissioner." See Conn. Gen. Stat. §§ 17-603 — 17-604, 17-2a, 17-2b.
Both 17-603 and 17-604 were statutes applicable to the DHR and were repealed by Public Act 92-262, § 86, effective July 1, 1993. The DSS 17-2a, 172b statutes that govern CT Page 8949 appeals are consistent in the role of the Commissioner and clearly focus on the fact that the appeal to the Superior Court must be from the decision by the Commissioner. In reviewing 17-2a this court notes that the language of the statute adds the sentence "authorized by law to request a fair hearing." A review by this court finds no legislative authority granted to the BRS client to appeal a decision of the director.[4]
Here the plaintiff in her well written brief argues to the court that the "required by statute" language of subsection 92) of § 4-166 is satisfied by federal statutory law. Respectfully this court disagrees. Nothing in the federal laws governing the function or purpose of the BRS requires or mandates that the state is to provide appellate or judicial review through statute or otherwise for decisions by the director. Recognizing that the Connecticut Supreme Court left this precise issue for another day in Summit, a look at our UAPA finds no language that allows every person to appeal from a decision of a state officer in a mixed state and federally funded program.
This court finds that unless the General Assembly has expressly incorporated federal authority as a right of appeal this court may not find such authority.[5]
Finally Public Act 95-355 clearly establishes jurisdiction under Conn. Gen. Stat. § 4-183 for an appeal, if the party is aggrieved by the final decision after the opportunity for a hearing, effective Oct. 1, 1995. A review of the language of the Act does not indicate that it is to be applied retroactively. Without such language this court's decision to dismiss this matter for lack of subject matter jurisdiction will not be affected.
This court recognizes that the BRS must make difficult and heart wrenching decisions that affect the very people they are to help on a daily basis. While the court feels that public policy reasons dictate extensive compassion in interpreting the rules of the agency, this court is unwilling to translate that compassion into a strained application of the law. Public policy does not afford support of jurisdiction here. Further, although the plaintiff's personal due process has been abridged by the application of law, she should not give up her struggle to utilize her gifts. CT Page 8950
The appeal is dismissed for lack of subject matter jurisdiction.