[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The complaint in this action alleges that the plaintiffs are two nursing homes whose rates for payment are determined by the defendant Commissioner of Social Services. At some point, the commissioner sent notices of rate reductions to the plaintiffs. Availing themselves of the applicable statutory scheme, the plaintiffs requested a rehearing pursuant to § 17b-238 (b) of the General Statutes. Within the statutory time limits, the plaintiffs submitted to the agency detailed written descriptions of the items of aggrievement. The complaint further alleges that the agency failed to hold a hearing within the statutorily mandated thirty day period following the filing of the detailed written descriptions; neither did the agency object to the filings. The complaint alleged that the plaintiffs had no adequate remedy at law, and sought a declaratory judgment that the plaintiffs' "items of aggrievement" be sustained, a reinstatement of the prior rate structure, and such other legal and equitable relief as may be appropriate.
The commissioner moved to dismiss, on the ground of failure to exhaust the administrative remedy prescribed in § 17b-238 (b) of the General Statutes. Judge Stengel denied this motion to dismiss without comment.
After the denial, the defendant commissioner filed another motion to dismiss. In connection with this motion, the commissioner submitted an affidavit to the effect that the plaintiffs' filing of the request for a rehearing had been found after having been misfiled, and a hearing was being scheduled.[1] The latest representation in the file is to the effect that a hearing was to have been held in April, 2000.[2] Relying on the "doctrine of primary jurisdiction", the second motion claimed that dismissal was appropriate because the agency was poised to deal with the issues, albeit somewhat belatedly. I heard arguments and granted the motion on March 27, 2000, with the summary comment, "It is not disputed that the agency has scheduled a hearing, and there is no indication that every issue cannot be resolved by the agency. In the circumstances, the agency should have the opportunity to address the issues first."
The plaintiffs appealed, and I received a request from the Appellate Court on about May 24, 2000, to file a memorandum of decision.
The regulatory scheme, as pertinent here, appears in § 17b-238 (b) of the General Statutes. In the first instance, the commissioner sets rates based upon data submitted by the regulated entities. If a party is aggrieved by such a decision, he is to request a rehearing within ten days of receipt of the original rate order. A detailed written description of all "items of aggrievement" is to be submitted by the aggrieved party within ninety days of the commissioner's decision. The rehearing "shall" be held within thirty days of the filing of the CT Page 7053 detailed written description, and a final decision "shall" be rendered within sixty days of the rehearing. Any items not successfully resolved at the rehearing "shall" be submitted to binding arbitration. The three arbitrators include one appointed by each party and a state trial referee appointed by the chief court administrator.
The defendant commissioner argues that this case should be dismissed by virtue of the "doctrine of primary jurisdiction", which holds that ordinarily a court should not entertain in the first instance a matter within an administrative agency's specialized field without giving the agency the opportunity to consider the matter. See Sharkey v. Stamford,196 Conn. 253, 256 (1985).[3] Where an adequate administrative remedy exists, the administrative remedy must be exhausted. Connecticut Life Health Guaranty Association v. Jackson, 173 Conn. 352, 357. It simply is elementary hornbook law that administrative remedies ordinarily must be exhausted before resort may be taken to the courts. In this case, of course, it is not disputed that a hearing has been scheduled and, by the time this is written, may have been held, and there appears to be no obstacle to the orderly disposition of the entire matter in the manner contemplated by the legislature when it enacted § 17b-238 (b).
The plaintiffs, while apparently accepting the general validity of the foregoing principles, suggest that there are several reasons why the doctrine of exhaustion of remedies should not bar this action. First, the plaintiffs claim that because the first motion to dismiss was denied, the "law of the case" prevents, or at least militates against, the granting of the present motion to dismiss. The "law of the case" does not, of course, bind the second judge; see, e.g., Lewis v. Gaming Policy Board,224 Conn. 693, 698-99 (1993); and, more importantly in the context of this case, the factual setting has changed. When the first motion was denied, the facts were such that, because the agency apparently denied or at least did not concede that the detailed statement had been filed, the plaintiff may have been denied any opportunity of redress if the case had been dismissed.[4] And if the detailed statement had in fact been filed, an injustice may have resulted if all relief had been denied.[5]
But the facts have changed: now it is not disputed that a detailed statement was filed, misplaced and then found, and the administrative process can take its course. Where facts have changed, the "law of the case" has little persuasive value.[6] Cf. Lewis, supra, 699.
The plaintiffs also suggest that the administrative remedies need not be exhausted because the matter to be determined is one of law only, such that any factual determinations and discretionary applications are superfluous, and cites authority such as Association of Not-for-ProfitProviders for the Aging v. Department of Social Services, 244 Conn. 378,400 (1998). This argument assumes that a failure of the agency to abide CT Page 7054 by the time requirements of § 17b-238 (b) results in an automatic default, such that any further proceedings by the agency are meaningless. I reject the argument for several independent reasons.
First, I do not assume that the time requirements in the statute are mandatory in the sense suggested by the plaintiffs. It is true that the word "shall" is used, with some repetitiveness, in the statute. But the use of the word "shall" does not necessarily mean that the duty is mandatory, especially where no remedy for noncompliance is provided by the statute in issue. Doe v. Statewide Grievance Committee, 240 Conn. 671,681-82 (1997). Compare, for example, § 54-821 of the General Statutes, which concerns motions for speedy trials in the criminal context. There, trial "shall" commence within a certain time frame, and the statute further provides that if the trial does not commence in that time frame, the information or indictment shall be dismissed. The plaintiffs would, in effect, have the court supply as the remedy for an agency's noncompliance with time requirements an order that the taxpayers pay everything that the plaintiffs have requested. As in Doe, supra, there quite clearly is a policy expressed by the legislature that the agency, with its expertise in the field of health care costs, ought to make the determinations as to rates. Ordinarily the public policy is to favor rather than to limit jurisdiction in the specialized agency. Id., at 684.
Cannata v. Department of Environmental Protection, 215 Conn. 616
(1990), similarly does not support the plaintiffs' position. There, the issue was whether an agency or the court was to be the first to decide the agency's jurisdiction. The court held that the exhaustion doctrine required that the plaintiff first seek the expertise of the agency, and indicated that factual determinations may be relevant. In Cannata, the court also analyzed the various possible outcomes in order to determine whether initial resolution by the agency was just.[7]
It would also be anomalous to invade the public treasury for the sole reason that the agency failed to schedule a hearing in a timely manner. As noted briefly above, there is nothing in § 17b-238 (b) to suggest such a result; there is not a specific remedy provided by statute and no negative language is in the statute. No legislative history has been provided to suggest that the legislature intended such a draconian remedy.[8] Compare Doe v. Statewide Grievance Committee, supra. And inLeo Fedus Sons Construction Company v. Zoning Board of Appeals,225 Conn. 432 (1993), the plaintiff-applicant argued that where a zoning board of appeals did not act in a timely manner, the application should be deemed to be approved. The Supreme Court aptly held that in the absence of a statutory provision of such a remedy, there is no such "automatic approval" rule. CT Page 7055
Because there is no "automatic approval" rule, and because the administrative machinery is apparently in motion so that an order to proceed is academic, the action is dismissed. Resort to the rate-setting expertise of the agency is the legislatively mandated method to resolve the dispute, and the legislatively mandated method must be pursued prior to resort to the court.
Beach, J.