[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs appeal from the decision of the Monroe Planning and Zoning Commission (the "Commission"). granting the defendant, Kindercare Learning Centers, Inc. ("Kindercare"), a special exception in a DB-1 zone for construction of a new commercial structure for use as a daycare facility and associated site improvements. The plaintiffs own two daycare facilities in Monroe, one of which is located approximately 250 feet from the proposed daycare facility, the other of which is located in excess of a mile away. The plaintiffs are not statutorily aggrieved under § 8-8
of the General Statutes nor do they claim to enjoy such status. The plaintiffs allege that they are aggrieved by the decision of the commission because they are in direct competition with Kindercare and as a result, (i) "the value of their leasehold interest will be lessened", (ii) the granting of the special permit will result in unfair or illegal competition" with it.
On August 21, 1998 the defendants filed a motion to dismiss the appeal pursuant to § 8-8(i) on the ground that the plaintiffs are not aggrieved parties under § 8-8 (a)(1) of the General Statutes. On April 27, 1999 the court denied the defendant's motion to dismiss.Johnsson v. Monroe Planning and Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 354743 (April 27, 1999 Rush. J.), holding that the plaintiffs had presented a "colorable claim, [the] injury of which they complain is arguably within the zone of interests sought to be protected by Regulation 117-1100A(4)." Id. The court did not determine that the plaintiffs were classically aggrieved on any other basis.
At trial, the defendants renewed their claim of the absence of aggrievement and have requested the court, on the basis of Lewis v.Gaming Policy Board, 224 Conn. 698 (1993) to dismiss the appeal. The plaintiffs argue that the court is bound by the decision on the motion to dismiss and is therefore limited to an adjudication of the merits of the appeal. Such a request by the defendants implicates two principles of law, viz: res judicata and law of the case. CT Page 3947
The plaintiffs argue that the doctrines of res judicata and law of the case require a judge to honor a prior decision made by a coordinate judge of the same court because the denial of the motion to dismiss was final and binding and therefore is preclusive on subsequent adjudication of the issue. The plaintiffs first contend that the denial of the motion to dismiss is a final judgment because General Statutes § 8-8 (i)(n) permits the denial to be appealed to the Appellate Court through the process of certification.
The defendants counter that the denial of the motion to dismiss was not a final judgment, but an interlocutory order and therefore the court is not bound by Judge Rush's adjudication. The defendants reason that §8-8 (n) does not negate the common law and statutory requirements that the right to appeal depends upon the finality of the court's order.
Res Adjudicata
"The general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal." Shay v. Rossi, 253 Conn. 134, 164 (2000). Section 8-8 (n) provides "that the procedure on appeal shall be in accordance with the procedures provided by rule or law for the appeal of judgments rendered by the Superior Court." Therefore. § 8-8 (n) was not intended to abrogate long standing rules governing appealability of orders and decrees but rather to preserve and apply those rules to adjudication of subsection (i) motions to dismiss. Those rules are encapsulated in our Supreme Court's discussion of the matter in CFM of Connecticut Inc. v.Choudhury, 239 Conn. 375. 399 (1996). "State v. Curcio, 191 Conn. 27
(1983) provides the standard by which to gauge the finality, for purposes of appeal, of an order like that of Judge Susco. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. This doctrine is not an exception to but simply an application of the final judgment rule embodied in § 52-263. Waterbury Teacher's Association v. Freedom ofInformation Commission, 230 Conn. 441. 447-48 (1994). This standard is also appropriate to employ in this case for the determination of whether Judge Susco's order was final for purposes of res judicata because it is fully consistent with the requirement of finality for those purposes. Like the standards for finality in the realm of res judicata, the Curcio
standard precludes any provisional, tentative or conditional adjudication, and it focuses on the completion of all steps necessary for the adjudication of the claim, short of execution or enforcement. We can see no principle reason in this case to differentiate between the CT Page 3948 standard for finality for purposes of appeal and the standard for finality for purposes of res judicata."
Judge Rush's order does not satisfy this test and so the plaintiff's argument based upon res judicata must fail. The court reaches this conclusion notwithstanding the disclaimer "except as otherwise provided herein" recited in subsection (n). Obviously, if a motion to dismiss were to have been granted the order would have satisfied the second circumstance in Choudbury if not the first. This therefore is what is meant by the exception "except as otherwise provided herein" referred to in subsection (n). A denial of such a motion is still subject to "the procedures provided by rule or law" as set forth in Choudhury case.
Law of the Case
"A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he himself made the original decision." Breen v. Phelps, 186 Conn. 86. 98 (1982). "According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case upon a question of law." Id., 98-99. "A judge should hestitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if the case comes before him regularly and if he becomes convinced [that] the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." Id., 99-100. "[W]here the views of the law expressed by a judge at one stage of the proceedings differ from those at another at a different stage, the important question is not whether there [is] a difference but which view [is] right." Lewis v.Gaming Policy Board, supra at 699 n. 5. Revisiting this issue is especially appropriate for three reasons: (1) The issue involves the subject matter jurisdiction of the court which the court may address at any time even on its own motion. (2) the court has taken additional evidence which it makes it clear that the plaintiffs are not aggrieved for the reasons stated below. Lewis v. Gaming Policy Board, supra at 699, (3) the Appellate Court's decision in Post Limited Partnership v.Regional Council of Governments, 60 Conn. App. 21 (2000) cert. granted.255 Conn. 903 (2000) was not decided until five months after Judge Rush's decision, our courts' latest pronouncement of the rule which governs classical aggrievement in the context of commercial competition. To refrain from dismissing an action where there is no subject matter jurisdiction would manifestly create an injustice.
Aggrievement
CT Page 3949
It is a well settled rule of law that "[p]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 192 (1996). The plaintiffs have conceded that they are not statutorily aggrieved under § 8-8 (a) of the General Statutes. As stated earlier, the plaintiffs claim that they are classically aggrieved because the decision of the commission will result in unfair or illegal competition against them and will lessen the value of their leasehold interest.
"[T]he fundamental test for determining aggrievement encompasses a well settled twofold determination: First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second. the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted). New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95 (1998).
"Ordinarily, an allegation that a governmental action will result in competition harmful to the complainant's business would not be sufficient to qualify the complainant as an aggrieved person." State Medical Societyv. Board of Examiners in Podiatry, 203 Conn. 295, 301 (1987). "It is a principle of common law that one who causes loss of business or occupation to another merely by engaging in a business or occupation in good faith is not liable to the other for the loss so caused, though he knows the loss will result. . . . These substantive principles have engendered correlative jurisdictional rules. Although an allegation merely of competition likely to result in lost revenues is ordinarily insufficient to confer standing, this court has frequently assumed jurisdiction as a matter of course over claims of unfair or illegal competition." Id. at 302.
The court must consider whether "the interest sought to be protected by the complainant is arguably within the zone of interests to be protectedby the [regulation] in question." Id. at 345. (Emphasis added). Accordingly, in order for the court to find the plaintiffs aggrieved the court must find that the regulation which the plaintiffs claim the commission violated in granting the special permit to Kindercare was intended to protect the the commission to consider the need for an additional daycare center in Monroe and to consider its effect on the growth of existing businesses. Section 117-1100(A)(4) provides, in pertinent part, that "[a] new building to be constructed or any building CT Page 3950 not formerly a business shall be required to obtain a special exception permit for business use prior to its use. In addition the use will . . . [b]e necessary for the welfare and convenience of the townspeople and provide for the growth of appropriate business and retail establishments in the town."
The regulation at issue here is similar to the legislation at issue inPost Limited Partnership v. Regional Council of Governments, supra. The legislation in that case was for the promotion of municipal and regional economic growth. The court agreed with the plaintiff that the manifest agenda of § 8-189 is the promotion of municipal and regional economic growth. Nonetheless, "nothing in this section manifests legislative concern for the interests of individual competitors." Id. at 32. The court also stated that "unless the applicable [regulation] expressly requires consideration of the interests of existing competitors . . . an existing licensee has no standing to question the wisdom of adding potentially competing service providers to the market place." Id. at 33. Similarly, in the present case, unless section § 117-1100(A)(4) expressly requires the commission to consider the interests of existing day care competitors in the town of Monroe, the plaintiffs cannot prove that they are aggrieved by the commission's decision. The language of § 117-1100(A)(4) does not expressly require the commission to consider the interests of existing competitors, nor could it under the powers conferred on it by statute.
At the hearing before Judge Rush on the motion to dismiss, the plaintiffs analogized to Light Rigging Co. v. DPUC, 219 Conn. 168 (1991). In that case the plaintiffs held certificates of public convenience and necessity issued by the DPUC that authorized them to provide services to the public. In that case the court found that "General Statutes . . . 16-286 requires the DPUC to consider the existing motor transportation facilities and the effect upon them of granting such a certificate, [and] the public need for the service the applicant proposes to render when determining whether to grant a certificate of public convenience and necessity." Id. at 176. The court held that "[b]ecause § 16-286 expressly requires the DPUC to consider public need for the services to be rendered by an applicant before granting a certificate . . . existing certificate holders are entitled to be free of competition for which no need has been shown." Id. at 177.
In an effort to satisfy this standard the plaintiffs argue that they are aggrieved because they hold a license to operate their daycare facilities from the State of Connecticut Department of Public Health and Addiction Services and the Monroe zoning regulations require the commission to consider the public need for another daycare facility. This case is distinguishable from Light Rigging Co. v. DPUC because the CT Page 3951 language of § 117-1100(A)(4) only requires the commission to consider whether the new business will be necessary for the "welfare and convenience of the townspeople" and for the "growth of appropriate business and retail establishments in town." (Emphasis added). There is no language which requires the commission to consider the existing day care businesses and the effect which the introduction of another day care establishment will have on existing businesses. The language is general and merely requires the commission to determine that the new business is necessary for the public welfare and the growth of the town.
Furthermore, even if the regulation were interpreted to mean that the commission must determine the public need for another day care facility in the town, this does not confer standing on the plaintiffs. "In LightRigging Co., the trucking company had standing, not because the Department of Public Utility Control was required to consider the public need for the proposed services, but rather, because its competitive interest was protected by the statute." Med-Trans, Inc. v. DPUC,242 Conn. 152, 164 (1997). Our Supreme Court has concluded that "public necessity alone does not confer aggrievement." Id. at 164. Although the plaintiffs' business may suffer from new competition resulting from the granting of the special exception, the zoning regulations were not intended to protect against the type of competition of which the plaintiffs complain.
"Our case law indicates that the primary purpose of zoning is to protect the public interest. `The object of zoning, primarily, is to promote the health, safety, welfare and prosperity of the community.Devaney v. Board of Zoning Appeals, 132 Conn. 537 (1946).'" Stephen Rainey Memorial Fund v. Old Saybrook, 4 Conn. App. 111, 113 (1985); see also Sonn v. Planning Commission, 172 Conn. 156, 161 (1976) ("[M]unicipal planning is intended to promote the general welfare and prosperity of its people"); Smith v. Planning and Zoning Board, 3 Conn. App. 550, 554
(1985), aff'd 203 Conn. 317 (1987). ("Purpose of the zoning is to regulate property uses in conformance with a comprehensive plan in a manner to advance the public welfare"). Moreover our Supreme Court has noted that "[t]he maximum possible enrichment of a particular developer is not the controlling purpose of zoning." Sonn v. Planning and Zoning, supra, 161; see also Hyatt v. Zoning Board of Appeals, 163 Conn. 379, 382
(1972). We conclude that zoning is meant to protect the public at large and not the interests of individual developers. Without some particular harm such as the maintenance of a nuisance affecting the land of the plaintiff or a statute allowing the maintenance of his law suit. the plaintiff can have no standing. See General Statutes § 8-8 (a)(1)".Lewis v. Swan, 49 Conn. App. 669, 677 (1998). Accordingly, the court finds that § 117-1100(A)(4) of the Monroe zoning regulations is intended to protect the citizens of Monroe and the general welfare and CT Page 3952 prosperity of the town and its townspeople, not the individual businesses in the town. The latter function is clearly not authorized by General Statutes § 8-2. The allegations and proof based upon the influx of competition does not satisfy the two prong test for classical aggrievement.
At the aggrievement hearing the plaintiff offered no evidence of a possible "lessening of values" of their "leasehold improvements or other elements of the leasehold estate." In this connection it is noted that at this hearing the plaintiffs sought but were denied a continuance for the purpose of engaging a traffic expert. The plaintiffs have likewise failed to meet their burden on this aspect of aggrievement as well.
The plaintiffs are not aggrieved. The appeal is dismissed.
BY THE COURT.
Mottolese, Judge