CONNECTICUT RESOURCES RECOVERY AUTHORITY *v.* COMMISSIONER OF ENVIRONMENTAL PROTECTION ET AL.

CITY OF NORWICH *v.* COMMISSIONER OF ENVIRONMENTAL PROTECTION ET AL.

SOUTHEASTERN CONNECTICUT REGIONAL RESOURCES RECOVERY AUTHORITY *v.* COMMISSIONER OF ENVIRONMENTAL PROTECTION ET AL.

STUART GREENFIELD ET AL. *v.* COMMISSIONER OF ENVIRONMENTAL PROTECTION ET AL.
(15013)
(15014)
(15015)
(15016)

PETERS, C. J., and CALLAHAN, NORCOTT, KATZ and PALMER, Js.

Argued April 19—decision released June 13, 1995

*Richard S. Cody*, for the town of Stonington.

*Richard G. Adams*, with whom were *Kathleen M. Conway, A. Lauren Carpenter, Shepard M. Remis, Michael Belsante* and, on the brief, *Andrew J. Pincus*, for Riley Energy Systems of Lisbon Corporation.

*Robert E. Wright*, for Connecticut Resources Recovery Authority.

*Roger E. Koontz*, with whom was *William B. Heinrich*, for Southeastern Connecticut Regional Resources Recovery Authority.

*Joseph Rubin*, assistant attorney general, with whom were *Patricia Horgan*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Krista E. Trousdale*, assistant attorney general, for the commissioner of environmental protection.

PETERS, C. J. The dispositive issue in these four administrative appeals is whether this court has jurisdiction to review the judgments of a trial court that sustained the plaintiffs' administrative appeals but ordered a remand for further administrative proceedings. Determination of that issue turns primarily on the date when the defendant Riley Energy Systems of Lisbon Corporation (RESOL) began administrative proceedings for permission to build a solid waste resources recovery facility in the town of Lisbon. If the administrative proceedings were initiated at a time when the governing statute was General Statutes § 4-183 (j), which makes any remand order a final judgment for appellate purposes,[1] then we have plenary jurisdiction to consider the appeals on their merits. If these proceedings were begun prior to the effective date of the amendments to the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; the existence of appellate jurisdiction depends upon the scope of the trial court's remand orders. We conclude that we have no such jurisdiction and therefore that the appeals must be dismissed.

The record discloses the following procedural history. On December 8, 1988, RESOL filed its initial three part

---

[1] Public Acts 1988, No. 88-317, § 23, substituted General Statutes § 4-183 (j) for former § 4-183 (g) and, in addition to other textual changes, added the following: "For purposes of this section, a remand is a final judgment." Pursuant to § 107 of the Public Act, its effective date was July 1, 1989.

application, pursuant to General Statutes § 22a-208a,[2] for a solid waste permit for a Lisbon resources recovery facility. Its submission, addressed to the waste engineering and enforcement division of the department of environmental protection (department), contained application forms, technical support documents and facility drawings. In its cover letter, RESOL stated: "We trust that you will find this application complete in all respects and will review the documents expeditiously." The following year, RESOL submitted a revised permit application that, on its cover sheet, was denominated a revision of its December, 1988 application. On October 2, 1990, RESOL filed an application for a determination of need pursuant to General Stat-

[2] At the time of the filing of RESOL's application in 1988, General Statutes § 22a-208a provided in relevant part: "PERMIT FOR CONSTRUCTION, ALTERATION OR OPERATION OF SOLID WASTE FACILITY. WRITTEN DETERMINATION OF NEED. (a) The commissioner of environmental protection may issue, deny, modify, renew, suspend, revoke or transfer a permit, under such conditions as he may prescribe and upon submission of such information as he may require, for the construction, alteration and operation of solid waste facilities, in accordance with the provisions of this chapter and regulations adopted pursuant to this chapter. . . .

"(b) No solid waste facility shall be built or established . . . until the plan, design and method of operation of such facility have been filed with the department and approved by the commissioner by the issuance of a permit to construct . . . .

"(c) No solid waste facility for which a permit to construct is required shall be operated . . . unless such facility has been issued a permit to operate. The commissioner may issue such permit upon determination that the facility (1) will be operated in accordance with applicable laws or regulations, (2) has been constructed in accordance with a permit issued pursuant to subsection (b) of this section, and (3) has satisfactorily completed any performance tests required by the commissioner. . . .

"(h) No permit for a solid waste facility shall be granted unless the commissioner has considered the compliance of the applicant . . . with all state and federal environmental laws. . . .

"(i) Before issuing a permit for a resources recovery facility, the commissioner shall make a written determination that such facility is necessary to meet the solid waste disposal needs of the state and will not result in a substantial excess capacity of resources recovery facilities or disrupt the orderly transportation of or disposal of solid waste in the area affected by such facility. . . ."

utes (Rev. to 1991) § 22a-208d.[3] In all, RESOL filed six applications with the department for the necessary permits to build a solid waste resources recovery facility in Lisbon.

The defendant commissioner of environmental protection (commissioner) issued a public notice, on May 19,

---

[3] General Statutes (Rev. to 1991) § 22a-208d provided in relevant part: "WRITTEN DETERMINATION OF NEED FOR RESOURCES RECOVERY FACILITY AND ASH RESIDUE DISPOSAL AREA (a) On and after July 1, 1989, the commissioner of environmental protection shall not issue a permit under section 22a-208a to construct or expand a resources recovery facility where any mixed municipal solid waste will be processed or a disposal area for ash residue generated by resources recovery facilities or mixed municipal solid waste unless said commissioner makes a written determination that such facility or disposal area is necessary to meet the solid waste disposal needs of the state and will not result in substantial excess capacity of resources recovery facilities or disposal areas.

"(b) The commissioner shall publish, at the expense of the applicant, notice of the preliminary determination of need for the proposed facility or disposal area in a newspaper having a substantial circulation in the area affected. . . . The commissioner shall not make a final determination of need for the facility or disposal area unless a permit is issued. A preliminary determination of need shall be void if a permit is not issued. As used in this section, 'preliminary determination of need' means a statement by the commissioner of the need for a resources recovery facility or disposal area during the pendency of an application to construct such facility or area.

"(c) (1) The applicant for a permit to construct or expand a resources recovery facility requiring a determination of need under subsection (a) shall provide such information as the commissioner deems necessary . . . .

"(d) (1) The applicant for a permit to construct a disposal area for ash residue generated by resources recovery facilities or mixed municipal solid wastes which requires a certificate of need under subsection (a) of this section shall submit such information as the commissioner deems necessary . . . .

"(2) In making the determination required under this subsection, the commissioner shall consider the information submitted pursuant to subdivision (1) of this subsection and any other information the commissioner deems pertinent.

"(e) The provisions of this section shall apply to any application for a permit under section 22a-208a for a resources recovery facility or for a disposal area for ash residue generated by resources recovery facilities or for a disposal area for mixed municipal solid wastes which is pending on or submitted after July 1, 1989. . . ."

1991, seeking public comment on RESOL's applications for: (1) a determination of need for a municipal solid waste regional resources recovery facility, pursuant to § 22a-208d; (2) a permit to construct and operate such a facility, pursuant to § 22a-208a;[4] (3) two permits to discharge waste waters in connection with such a facility, pursuant to General Statutes (Rev. to 1991) § 22a-430[5] and § 402 (b) of the federal Water Pollution

[4] General Statutes (Rev. to 1991) § 22a-208a provided in relevant part: "PERMIT FOR CONSTRUCTION, ALTERATION OR OPERATION OF SOLID WASTE FACILITY. (a) The commissioner of environmental protection may issue, deny, modify, renew, suspend, revoke or transfer a permit, under such conditions as he may prescribe and upon submission of such information as he may require, for the construction, alteration and operation of solid waste facilities, in accordance with the provisions of this chapter and regulations adopted pursuant to this chapter. . . .

"(b) No solid waste facility shall be built or established . . . until the plan, design and method of operation of such facility have been filed with the department and approved by the commissioner by the issuance of a permit to construct, provided, nothing in this chapter or chapter 446e shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal. . . .

"(c) No solid waste facility for which a permit to construct is required shall be operated on and after June 16, 1985, except for performance testing approved by the commissioner, unless such facility has been issued a permit to operate. The commissioner may issue such permit upon determination that the facility (1) will be operated in accordance with applicable laws or regulations, (2) has been constructed in accordance with a permit issued pursuant to subsection (b) of this section, and (3) has satisfactorily completed any performance tests required by the commissioner. . . .

"(h) No permit for a solid waste facility shall be granted unless the commissioner has considered the compliance of the applicant . . . with all state and federal environmental laws. . . ."

Effective July 1, 1989, the requirement that the commissioner make a determination of need for a resources recovery facility was transferred from § 22a-208a (i) to § 22a-208d. Public Acts 1989, No. 89-386, §§ 3, 4.

[5] General Statutes (Rev. to 1991) § 22a-430 provided in relevant part: "(FORMERLY SEC. 25-54I). PERMIT FOR NEW DISCHARGE. REGULATIONS. RENEWAL. SPECIAL CATEGORY PERMITS OR APPROVALS. LIMITED DELEGATION. GENERAL PERMITS. (a) No person or municipality shall initiate, create, originate or maintain any discharge of water, substance or material into the waters of the state without a permit for such discharge issued by the commissioner. . . . Application for a permit shall be on a form prescribed by the commissioner, [and] shall include such information as the

Control Act, as amended; 33 U.S.C. § 1251 et seq.; (4) a permit to construct a potential air contaminant source, pursuant to General Statutes (Rev. to 1991) § 22a-174;[6] and (5) a permit to divert waters in con-

commissioner may require . . . . The commissioner shall not issue or renew a permit unless such issuance or renewal is consistent with the provisions of the federal Clean Water Act (33 USC 1251 et seq.). . . ."

[6] General Statutes (Rev. to 1991) § 22a-174 provided in relevant part: "(FORMERLY SEC. 19-508). POWERS OF THE COMMISSIONER. REGULATIONS. FEES. EXEMPTIONS. (a) The commissioner, in the manner provided in subdivision (1) of section 22a-6, shall have the power to formulate, adopt, amend and repeal regulations to control and prohibit air pollution throughout the state or in such areas of the state as are affected thereby, which regulations shall be consistent with the Federal Air Pollution Control Act and which qualify the state and its municipalities for available federal grants. . . .

"(c) The commissioner shall have the power, in accordance with regulations adopted by him, (1) to require that a person, before undertaking the construction, installation, enlargement or establishment of a new air contaminant source specified in the regulations adopted under subsection (a), submit to him plans, specifications and such information as he deems reasonably necessary relating to the construction, installation, enlargement, or establishment of such new air contaminant source; (2) to issue a permit approving such plans and specifications and permitting the construction, installation, enlargement or establishment of the new air contaminant source in accordance with such plans, or to issue an order requiring that such plans and specifications be modified as a condition to his approving them and issuing a permit allowing such construction, installation, enlargement or establishment in accordance therewith, or to issue an order rejecting such plans and specifications and prohibiting construction, installation, enlargement or establishment of a new air contaminant source in accordance with the plans and specifications submitted; (3) to require periodic inspection and maintenance of combustion equipment and other sources of air pollution; (4) to require any person to maintain such records relating to air pollution or to the operation of facilities designed to abate air pollution as he deems necessary to carry out the provisions of this chapter and section 14-164c; (5) to require that a person in control of an air contaminant source specified in the regulations adopted under subsection (a), obtain a permit to operate such source if the source (A) is subject to any regulations adopted by the commissioner concerning high risk hazardous air pollutants, (B) burns waste oil, (C) is allowed by the commissioner, pursuant to regulations adopted under subsection (a), to exceed emission limits for sulfur compounds, (D) is issued an order pursuant to section 22a-178 or (E) violates any provision of this chapter, or any regulation, order or permit adopted or issued thereunder; (6) to require that a person in control of an air contaminant

nection with such a facility, pursuant to General Statutes (Rev. to 1991) § 22a-368.[7] Public hearings on all of RESOL's applications were held beginning on June 19, 1991, and continuing through December 15, 1991.

While the permit applications were pending before the commissioner, the plaintiffs city of Norwich, Connecticut Resources Recovery Authority (CRRA) and Stuart Greenfield petitioned, pursuant to General Statutes § 22a-19 (a),[8] to intervene as parties in the administrative proceeding. Thereafter, the plaintiff Southeastern Connecticut Regional Resources Recovery Authority (SCRRRA) petitioned, pursuant to General Statutes § 4-177a[9] and the rules of practice of

source who is not required to obtain a permit pursuant to this subsection register with him and provide such information as he deems necessary to maintain his inventory. . . ."

[7] General Statutes (Rev. to 1991) § 22a-368 provided in relevant part: "REGISTRATION OF EXISTING DIVERSIONS. PERMITS. TRANSFER. . . .

"(b) Notwithstanding any other provision of the general statutes or any special act to the contrary, no person or municipality shall, after July 1, 1982, commence to divert water from the waters of the state without first obtaining a permit for such diversion from the commissioner . . . ."

[8] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

[9] General Statutes § 4-177a provides in relevant part: "CONTESTED CASES. PARTY, INTERVENOR STATUS. (a) The presiding officer shall grant a person status as a party in a contested case if that officer finds that: (1) Such person has submitted a written petition to the agency and mailed copies to all parties, at least five days before the date of hearing; and (2) the petition states facts that demonstrate that the petitioner's legal rights, duties or privileges shall be specifically affected by the agency's decision in the contested case.

"(b) The presiding officer may grant any person status as an intervenor in a contested case if that officer finds that: (1) Such person has submitted ⸳

the department, to intervene as a party in the administrative proceeding. The commissioner granted all the petitions to intervene.

On October 5, 1992, after conducting a series of hearings on RESOL's applications, the commissioner issued the "Final Decision" granting RESOL all the requested permits. In response to petitions for reconsideration filed by CRRA and SCRRRA, the commissioner held additional hearings and entertained oral argument. On February 10, 1993, the commissioner issued the "Amended Final Decision" granting the permits.

CRRA, SCRRRA, Greenfield, and the city of Norwich thereafter filed separate administrative appeals, pursuant to General Statutes § 4-183 (a), in which they challenged the propriety of the issuance of the permits. RESOL intervened as a defendant in each action because of its interest as permittee, and the town of Stonington intervened as a plaintiff in each action pursuant to § 22a-19 (a). The plaintiffs alleged that the commissioner should have denied the permits, because, inter alia, there was no "need" for a resources recovery facility as required by § 22a-208d (a),[10] and because the construction of the facility would result in "unreasonable pollution, impairment or destruction" of natural resources in violation of General Statutes § 22a-15.[11]

a written petition to the agency and mailed copies to all parties, at least five days before the date of hearing; and (2) the petition states facts that demonstrate that the petitioner's participation is in the interests of justice and will not impair the orderly conduct of the proceedings."

[10] See footnote 3.

[11] General Statutes § 22a-15 provides: "DECLARATION OF POLICY. It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction."

The trial court consolidated the four administrative appeals for hearing and rendered judgments invalidating the permits and remanding the cases to the commissioner. Although the trial court agreed with the plaintiffs' procedural claims that they had standing to pursue their administrative appeals, the court rejected the plaintiffs' stated claims on their merits. The court nevertheless sustained the plaintiffs' appeals and invalidated the permits on a ground not raised by any of the parties. Condition 25 of the construction permit required RESOL to dispose of all solid waste from the Housatonic Resources Recovery Authority at the proposed Lisbon plant and directed that RESOL "shall only displace such waste by solid waste [that] it receives from other Connecticut towns." The court held that this condition imposed unconstitutional barriers to the importation of out-of-state waste, in violation of the commerce clause of the United States constitution. Concluding that the commissioner's decision to issue the construction permit was inextricably intertwined with the assumption that condition 25 could validly be imposed, the court ordered a remand in each case to enable the commissioner to reconsider the granting of the permit in light of the court's holding. After further briefing and oral argument, the court adhered to its judgment, clarified the terms of its remand orders and denied motions to open its judgments filed by RESOL and by CRRA and SCRRRA.

CRRA, SCRRRA and Stonington appealed from the trial court judgments to the Appellate Court, alleging, inter alia, that the trial court had improperly upheld the commissioner's determination that there was a "need" for an additional resources recovery facility. Norwich and Greenfield did not appeal. RESOL filed separate appeals from the judgments,[12] challenging the

[12] RESOL's appeals have been reclassified as cross appeals from three of the trial court judgments. RESOL's appeal from the fourth judgment remains classified as an appeal.

trial court's procedural and jurisdictional rulings, its failure to declare § 22a-208d unconstitutional, and its determination that condition 25 is unconstitutional and requires a remand. RESOL, CRRA and SCRRRA all filed cross appeals as well. We transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

To determine whether, in each case, the trial court's order of remand was a final judgment that would support an immediate appeal, we must resolve two issues. First, we must decide whether these administrative appeals are governed by § 4-183 (j), which, since its effective date of July 1, 1989, characterizes any remand order in an administrative appeal as a final judgment. Second, if the appeals instead are governed by the pre-July 1, 1989 provisions of the Uniform Administrative Procedure Act, we must determine whether the terms of the trial court's judgments, including its remand orders, constitute a final judgment, for purposes of appeal, under the test for a final judgment established by *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), and its progeny. We conclude that both questions should be answered in the negative and therefore conclude that the trial court did not render final judgments in these cases.

I

The legislature enacted far-reaching amendments to the Uniform Administrative Procedure Act in 1988. All of the provisions of that act, however, including its appeal provisions, apply only in cases where the underlying agency proceedings had commenced on or after July 1, 1989. *Vernon Village, Inc.* v. *Carothers*, 217 Conn. 130, 136–37, 585 A.2d 76 (1991). In that case, we concluded that, "in accordance with the [department] regulations, the agency proceedings had commenced on the date that the commissioner first took

formal action against the respondents by issuing the pollution abatement orders." Id., 141. We expressly refused to "view each fragmented subproceeding within an agency" as an independent triggering event for the applicability of the amended Uniform Administrative Procedure Act. Id.

The record in this case demonstrates that the agency proceedings commenced on December 8, 1988, when RESOL filed its first permit application with the department pursuant to § 22a-208a. Regulations of the department provided, then and now, that "[a]n administrative action of the department commences when (1) an application or petition is received by the department." Regs., Conn. State Agencies § 22a-3a-1 (a) (1) (B) (3), now § 22a-3a-2 (c) (1) (A). Throughout the hearings and adjudicative proceedings involving RESOL's efforts to construct a solid waste resources recovery facility, proceedings conducted by the department have addressed all of RESOL's permit applications jointly.

We are unpersuaded by RESOL's contention that the relevant agency proceedings did not commence until it filed its application for a determination of "need" for such a facility pursuant to § 22a-208d (a). A determination of "need" has always been a requisite for the issuance of a construction permit under § 22a-208a. Until 1989, that requisite appeared in § 22a-208a itself. Since the enactment of § 22a-208d (a), the cross reference has appeared in the opening words of § 22a-208d (a), which instruct that "the commissioner of environmental protection shall not issue a permit under section 22a-208a" unless such a determination has been made. In § 22a-208d (e), furthermore, the legislature required the commissioner to apply the department's regulatory provisions to any application for a permit for a resources recovery facility that was pending before July 1, 1989. In light of this statutory pattern, separation of the application for a determination of "need" from

the application for the construction permit would be precisely the kind of fragmentation of agency subproceedings that we decried in *Vernon Village, Inc.* v. *Carothers,* supra, 217 Conn. 141.

Our conclusion that RESOL's permit applications predated the effective date of the amended Uniform Administrative Procedure Act means that an order of remand is not automatically a final judgment. Compare General Statutes (Rev. to 1989) § 4-183 (j). It is of no moment whether, as RESOL contends, the parties or the trial court mistakenly assumed that these administrative proceedings were governed by the amended Uniform Administrative Procedure Act. Appellate jurisdiction cannot be conferred either by agreement of the parties or by estoppel. "The right of appeal is purely statutory. It is accorded only if the conditions fixed by the statute and the rules of court for taking and prosecuting the appeal are met." *State* v. *Curcio,* supra, 191 Conn. 30; see also *Vernon Village, Inc.* v. *Carothers,* supra, 217 Conn. 142; *Charles Holdings, Ltd.* v. *Planning & Zoning Board of Appeals,* 208 Conn. 476, 479, 544 A.2d 633 (1988); *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities,* 201 Conn. 350, 356, 514 A.2d 749 (1986).

## II

In light of our conclusion that these administrative proceedings are not governed by the amended Uniform Administrative Procedure Act, whether the trial court rendered judgments that are immediately appealable depends upon whether its remand orders satisfy the generic test for a final judgment articulated in *State* v. *Curcio,* supra, 191 Conn. 31. Under that test, an order of a trial court is immediately appealable only "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further pro-

ceedings cannot affect them." Id. We conclude that the judgments are not immediately appealable.

Because these remand orders, which directed reconsideration of the agency's determination of need, cannot be said, on any theory, to have "terminated" any part of the proceedings, the only issue of appealability is whether the rights of the parties have been so definitively resolved "that further proceedings cannot affect them." In *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 521 A.2d 566 (1987) (*Schieffelin*), we held that this issue must be resolved by reference to the scope of the order of remand. "[W]e have distinguished . . . between two kinds of administrative remands. A trial court may conclude that an administrative ruling was in error and order further administrative proceedings on that very issue. In such circumstances, we have held the judicial order to be a final judgment, in order to avoid the possibility that further administrative proceedings would simply reinstate the administrative ruling, and thus would require a wasteful second administrative appeal to the Superior Court on that very issue. See, e.g., *Watson* v. *Howard*, 138 Conn. 464, 468, 86 A.2d 67 (1952); *Santos* v. *Publix Theatres Corporation*, 108 Conn. 159, 161, 142 A. 745 (1928). A trial court may alternatively conclude that an administrative ruling is in some fashion incomplete and therefore not ripe for final judicial adjudication. Without dictating the outcome of the further administrative proceedings, the [trial] court may insist on further administrative evidentiary findings as a precondition to final judicial resolution of all the issues between the parties. . . . Such an order is not a final judgment. See, e.g., *Burdick* v. *United States Finishing Co.*, 128 Conn. 284, 288–89, 22 A.2d 629 (1941); *Luliewicz* v. *Eastern Malleable Iron Co.*, 126 Conn. 522, 524, 12 A.2d 779 (1940)." *Schieffelin*, supra, 410.

Applying this distinction, we held, in *Schieffelin*, that the administrative record was incomplete and immediate appellate review of a judicial order of remand was, therefore, premature, because the remand order directed the agency to make an administrative ruling on cause to terminate the defendants' liquor distributorships, an issue that was crucial to the parties' substantive claims for relief. Id., 410–11. We similarly held, in *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 272–73, 579 A.2d 505 (1990), that there could be no immediate appeal of a remand order that required the defendant board to exercise its independent judgment about remedial alternatives for an employee who had resigned his employment position in reliance on a settlement provision to which his public employer had no legal authority to agree. We came to the opposite conclusion in *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 131, 653 A.2d 798 (1995), in which we found a final judgment despite the existence of a remand order. In that case, the trial court overturned the defendant commission's denial of a zoning permit, ordered the permit to be granted and remanded the case ''only for the limited purpose of allowing the commission to impose reasonable conditions on or make reasonable changes to the development [plan], if it so chose.'' Id.

In the cases presently before us, the trial court described the reason for its remand orders in some detail. ''The invalidity of condition 25 does not preclude the issuance of a permit for the Lisbon plant by [the department], but it does raise the question whether the permit would have been issued if the final decision maker had realized that condition 25 in its entirety was unenforceable and that the protection it afforded against incinerating out-of-state waste at the Lisbon plant was illusory. Would [the department] have accepted the [Housatonic Resources Recovery Author-

ity] contracts as sufficient compliance with the requirement of General Statutes § 22a-208d (c) (1) (D) (i) for 'contracts or letters of intent' to evidence the quantity of waste the [Housatonic Resources Recovery Authority] towns would send to Lisbon if it were aware that the condition intended to insure delivery of such waste to Lisbon was not enforceable? Would [the department] have made the same determination of need if it had known that the requirement imposed for displacement of out-of-state waste by available Connecticut waste would be invalidated? These are fact-bound questions that can be resolved only by further agency proceedings."

The trial court then defined the scope of the remand orders. "The purpose of the remand is (1) to determine whether [the department], as the fact-finding agency, would have issued the permit despite the infirmities in the [Housatonic Resources Recovery Authority] contracts, which condition 25 was intended to cure; and (2) to determine whether the prediction that a shortage of waste disposal capacity in this state, amounting to 400 [tons per day], will occur by 1998, which is the basis for the [department's] finding of a need for the Lisbon plant, warrants issuance of the permit at this time, given the existence of alternatives and the invalidity of the restriction imposed by condition 25 on out-of-state waste. The critical question is whether [the department] would have issued the permit without the restrictions imposed by condition 25.

"For the purpose of the remand, the further proceedings should be limited to the present evidentiary record. Those issues definitively resolved by the original decision of this court should not be relitigated. If [the department] should decide to exercise its authority under [General Statutes] § 4-180a (b) to consider a reversal or modification of its final decision 'on a show-

ing of changed conditions,' the proceedings for that purpose should be conducted separately from the remand proceedings."

In our view, the remand orders in these cases seek amplification of "an administrative ruling [that] is in some [material] fashion incomplete and therefore not ripe for final judicial adjudication." *Schieffelin*, supra, 202 Conn. 410. Even though the trial court ordered the commissioner to respond to its remand orders on the existing evidentiary record, the court described the commissioner's reconsideration of RESOL's permit, without condition 25, as raising "fact-bound questions that can be resolved only by further agency proceedings." Unlike *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 131, the trial court did not order that the permit be granted with whatever reasonable conditions the commissioner might append, but left it to the commissioner to determine whether any permit at all should be issued. We conclude, therefore, that the present appeals are not taken from final judgments.

The appeals are dismissed.

In this opinion the other justices concurred.