BROOKRIDGE DISTRICT ASSOCIATION *v.*
PLANNING AND ZONING COMMISSION
OF THE TOWN OF GREENWICH ET AL.
(SC 16522)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 30, 2001—officially released March 12, 2002

*Andrew J. McDonald*, with whom were *Brian C. Roche* and, on the brief, *Gerald C. Pia*, for the appellant (plaintiff).

*Haden P. Gerrish*, for the appellee (named defendant).

*Daniel W. Moger, Jr.*, for the appellee (defendant Pathways, Inc.).

*Opinion*

ZARELLA, J. This appeal arises out of a proposed stipulated judgment pursuant to which the named defendant, the planning and zoning commission of the town of Greenwich (commission), and the defendant, Pathways, Inc. (Pathways), agreed to settle an appeal by Pathways from the decision of the commission denying approval of Pathways' application for a special permit and site plan approval. The plaintiff, Brookridge District Association (Brookridge), a neighborhood association of landowners that opposed Pathways' proposed project, appealed to the trial court, challenging the commission's approval of the proposed stipulated judgment. The trial court dismissed Brookridge's appeal for lack of subject matter jurisdiction. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. Pathways applied to the commission for a special permit and site plan approval to build a group living facility for recovering psychiatric patients at 509 East Putnam Avenue in Greenwich. Pathways described its proposed facility as a "convalescent home" with sixteen one-bedroom living units, an additional unit for one overnight staff member and facilities for dining and recreation. Occupancy was to be limited to people suffering from psychiatric illness. Pathways'

application was the subject of a public hearing held on May 11, 1999. On June 23, 1999, the commission held another public hearing on Pathways' application at which the commission voted to deny it.

Thereafter, Pathways appealed to the Superior Court from the commission's decision denying its application. Subsequently, Pathways and the commission considered the possibility of entering into a stipulated judgment pursuant to which the commission would approve Pathways' application subject to Pathways' agreement to reduce the size of the proposed facility from sixteen one-bedroom living units to ten one-bedroom living units and to withdraw its appeal.

On January 23, 2000, Brookridge unsuccessfully moved to intervene[1] in Pathways' appeal pursuant to General Statutes §§ 52-102[2] and 52-107,[3] and Practice

---

[1] On February 14, 2000, Pathways filed an objection to Brookridge's motion to intervene in Pathways' appeal, and, on March 3, 2000, the commission filed a similar objection. On March 27, 2000, the trial court, *Hon. Robert Satter*, judge trial referee, denied Brookridge's motion to intervene. On April 17, 2000, Brookridge filed a petition for certification to appeal to the Appellate Court from the trial court's decision to deny the motion to intervene. The Appellate Court granted that petition on May 24, 2000. On October 23, 2000, we transferred Brookridge's appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. In the companion case also released today, *Pathways, Inc.* v. *Planning & Zoning Commission*, 259 Conn. 619, 624–25, 793 A.2d 222 (2002), we dismissed Brookridge's appeal for lack of subject matter jurisdiction, concluding that the trial court's denial of Brookridge's motion to intervene was not an appealable final judgment inasmuch as Brookridge successfully had intervened pursuant to General Statutes § 22a-19.

[2] General Statutes § 52-102 provides: "Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein; provided no person who is immune from liability shall be made a defendant in the controversy."

[3] General Statutes § 52-107 provides in relevant part: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination

Book §§ 9-18[4] and 9-19.[5] At the conclusion of a public hearing held on January 28, 2000, the commission voted to approve the settlement and enter into the proposed stipulated judgment.

On September 29, 2000, Brookridge appealed to the trial court from the commission's decision to settle Pathways' appeal by entering into the proposed stipulated judgment.[6] On October 11, 2000, Pathways filed a motion to dismiss Brookridge's appeal. On January 8, 2001, the trial court dismissed Brookridge's appeal for lack of subject matter jurisdiction, over Brookridge's objection, and rendered judgment thereon, from which Brookridge, on the granting of certification, appealed to the Appellate Court. We granted Brookridge's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

As a preliminary matter, we set forth the applicable standard of review. "The standard of review of a motion

cannot be had without the presence of other parties, the court may direct that such other parties be brought in. . . ."

[4] Practice Book § 9-18 provides: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party."

[5] Practice Book § 9-19 provides: "Except as provided in Sections 10-44 and 11-3 no action shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the judicial authority, at any stage of the cause, as it deems the interests of justice require."

[6] Although Brookridge's appeal to the Superior Court was filed approximately eight months after the commission voted to approve the settlement of Pathways' appeal and to enter into the proposed stipulated judgment, no issue regarding timeliness was raised in the trial court or on appeal to this court. Because we conclude that the commission's decision to approve the settlement by entering into the proposed stipulated judgment is not a decision within the meaning of General Statutes § 8-8 (b), and, therefore, that the trial court lacked subject matter jurisdiction over Brookridge's appeal, we need not address the timeliness of Brookridge's appeal.

to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Lucas* v. *Riordan*, 62 Conn. App. 566, 568–69, 771 A.2d 270 (2001).

The dispositive issue in this appeal is whether there is a right of appeal from a planning commission's decision to settle a pending land use appeal by entering into a stipulated judgment. We conclude that no such right exists and, therefore, affirm the judgment of the trial court.

A brief overview of the statutory scheme that governs administrative appeals, including land use appeals, is necessary to our resolution of this issue. "There is no absolute right of appeal to the courts from a decision of an administrative agency." *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 699, 620 A.2d 780 (1993); accord *Fairfield* v. *Connecticut Siting Council*, 238 Conn. 361, 368, 679 A.2d 354 (1996). "Appeals to the courts from administrative [agencies] exist only under statutory authority . . . ." *Tazza* v. *Planning & Zoning Commission*, 164 Conn. 187, 190, 319 A.2d 393 (1972); accord *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 234 Conn. 624, 640, 662 A.2d 1251 (1995); *Charles Holdings, Ltd.* v. *Planning & Zoning Board of Appeals*, 208 Conn. 476, 479, 544 A.2d 633 (1988).

"Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Internal quotation marks omitted.) *Charles Holdings, Ltd.* v. *Planning & Zoning Board of Appeals*, supra, 479; see also *Connecticut Resources Recovery Authority* v. *Commissioner of Environmental Protection*, 233 Conn. 486, 498, 659 A.2d 714 (1995) ("The right of appeal [from the decision of an administrative agency] is purely statutory. It is accorded only if the conditions fixed by . . . statute . . . are met." [Internal quotation marks omitted.]). In the absence of statutory authority, therefore, there is no right of appeal from a planning commission's decision to settle an appeal by entering into a stipulated judgment.

Pursuant to General Statutes § 8-8 (b),[7] however, any person "aggrieved" by a decision of a municipal planning or zoning commission may appeal to the Superior Court. In the present case, although Brookridge was not a party to Pathways' underlying appeal from the commission's denial of Pathways' application for a special permit and site plan approval, Brookridge sought to appeal, pursuant to § 8-8 (b), from the commission's decision to settle Pathways' appeal by entering into a stipulated judgment. The trial court dismissed Brookridge's appeal for lack of subject matter jurisdiction, relying on *Sendak* v. *Planning & Zoning Commission*, 7 Conn. App. 238, 508 A.2d 785 (1986).

---

[7] General Statutes § 8-8 (b) provides in relevant part: "Except as provided in subsections (c), (d) and (q) of this section . . . any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

In 1999, § 8-8 (b) was the subject of technical amendments that became effective July 1, 2000. See Public Acts 1999, No. 99-238, §§ 5, 8. In 2001, § 8-8 (b) was the subject of further technical amendments that are not applicable to Brookridge's appeal. We refer to the current revision of § 8-8 (b), which contains the language applicable for purposes of this appeal.

In *Sendak*, the Appellate Court affirmed the trial court's dismissal of the plaintiff's appeal from the Ridgefield planning and zoning commission's decision to enter into a stipulated judgment to settle several pending actions. See id., 239, 242. The court reasoned that two competing policy interests exist when a party seeks to challenge, by way of an appeal, the decision of a planning commission to settle a pending appeal. Id., 242. "One is the powerful interest in the promotion of settlement of litigation by agreement of the parties. . . . [T]his interest applies to administrative proceedings by explicitly approving a stipulation for judgment in an administrative appeal then pending before it. . . . This interest would be seriously undercut if, after a planning commission has in good faith settled a pending appeal by agreeing to a stipulated judgment, that settlement could be challenged by a subsequent appeal by third parties.

"The other powerful competing . . . interest is the need for protection of the integrity of the land use planning process. This interest derives from the recognition that, where an initially unsuccessful applicant before a planning commission takes an appeal to the court, the applicant and the commission could abuse the entire process by collusively stipulating to a judgment in the applicant's favor, and thus evade both judicial review and effective scrutiny by potentially aggrieved neighbors whose attempts to intervene had not yet been acted upon. This recognition derives, in turn, from the reality that there are cases in which the propriety of the conduct of the commission is open to criticism." (Citations omitted; internal quotation marks omitted.) Id., 242–43.

We agree with the Appellate Court's analysis of these competing interests and with its conclusion that a planning commission's decision to settle an appeal by enter-

ing into a stipulated judgment is not an appealable decision.

Brookridge maintains, however, that *Sendak* is not applicable to the present case because *Sendak* was decided under General Statutes (Rev. to 1985) § 8-28, which subsequently has been amended. Brookridge argues that the change from the language contained in General Statutes (Rev. to 1985) § 8-28 (a), which refers to "an official action or decision," to the language contained in General Statutes § 8-28, which, by incorporation of the language of § 8-8, refers to "any decision," broadened the scope of permitted appeals. General Statutes (Rev. to 1985) § 8-28 provided in relevant part: "(a) . . . Except as provided in section 8-30, any person aggrieved by *an official action or decision* of a planning commission, including a decision to take no action, or any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in any decision of a planning commission, may appeal therefrom, within fifteen days from the date when notice of such action or decision was so published, to the superior court . . . ." (Emphasis added.) In 1989, § 8-28 was amended by Public Acts 1989, No. 89-356, § 2, which replaced the foregoing language with the following language: "Any appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8 . . . ." Under General Statutes § 8-8 (b), "any person aggrieved by *any decision* of a board may take an appeal to the superior court . . . ." (Emphasis added.)

Brookridge claims that the language change from "official action or decision" in § 8-28 to "any decision" in § 8-8 (b) broadens the scope of authorized appeals. This is a distinction without a difference in the context of the statute, however. According to Webster's Third New International Dictionary, the term "official" means "derived from the proper office or officer or authority

. . . ." Thus, an official decision is a decision derived
from the proper authority. Conversely, a decision that
is not official is not derived from the proper authority
and, therefore, carries no weight of authority or enforce-
ability. Thus, we assume, in the absence of any contrary
legislative history or authority, that the legislature
intended to authorize appeals only from those decisions
that have legal effect and are enforceable. Conse-
quently, for purposes of this appeal, we find no signifi-
cance in the change in language from "official action
or decision" in § 8-28 to "any decision" in § 8-8.

Brookridge next argues that, even if *Sendak* does
apply, its appeal falls within an exception to the rule
that no appeal lies from a decision by a planning com-
mission to settle an appeal by entering into a stipulated
judgment. Brookridge notes that the court in *Sendak*
indicated that an allegation of "bad faith, collusion or
other improper conduct by the parties"; *Sendak* v. *Plan-
ning & Zoning Commission*, supra, 7 Conn. App. 244;
could constitute a ground for permitting appeals by
third parties, thereby creating an exception. See id.
Brookridge fails, however, to consider the impact of
certain legislation that became effective after the rele-
vant facts in *Sendak* had occurred. See footnote 8 of
this opinion.

The legislature addressed the important policy issues
discussed in *Sendak* through its enactment of General
Statutes § 8-8 (m).[8] Section 8-8 (m) provides that no

---

[8] General Statutes § 8-8 (m) provides: "No appeal taken under subsection
(b) of this section shall be withdrawn and no settlement between the parties
to any such appeal shall be effective unless and until a hearing has been
held before the Superior Court and such court has approved such proposed
withdrawal or settlement."

Subsection (m) has been transferred to subsection (n) in light of recent
amendments to § 8-8. See Public Acts 2001, No. 01-47, § 1 (effective October
1, 2001). The relevant text quoted above appears in § 8-8 (m) in the General
Statutes as revised to 2001, however.

Subsection (m) originally appeared in § 8-8 as subsection (h) by virtue
of the passage of Public Acts 1984, No. 84-227, § 1 (P.A. 84-227), which

settlement between parties to a land use appeal shall be effective until a hearing has been held before the Superior Court and that court has approved the proposed settlement. A hearing pursuant to § 8-8 (m) promotes judicial economy through the promotion of settlement of litigation. Furthermore, a hearing held pursuant to § 8-8 (m) provides a forum for the presentation of any challenges to a settlement, including any allegations of bad faith, collusion or other improper conduct by the parties to the settlement. A hearing held pursuant to § 8-8 (m) thus serves to protect the public interest by guarding against any attempt on the part of the settling parties to evade judicial review and scrutiny by potentially aggrieved landowners.

Although the statutory language of § 8-8 (m) became effective subsequent to the underlying proceedings in *Sendak* and, therefore, did not control the outcome of that case; *Sendak* v. *Planning & Zoning Commission*, supra, 7 Conn. App. 243 n.1; see footnote 8 of this opinion; the Appellate Court nevertheless recognized that the statutory language of § 8-8 (m) addressed the two important policy interests that exist when a third party seeks to challenge, by way of an appeal, the decision of a planning commission to settle a pending appeal. *Sendak* v. *Planning & Zoning Commission*, supra, 243 n.1. Specifically, the court in *Sendak* stated that the "legislation [establishing the statutory language of § 8-8 (m)] . . . is a legislative recognition of the competing interests which . . . have [been] identified.

became effective October 1, 1984. In *Sendak*, the plaintiff landowners filed their appeal on August 1, 1984, two months before the applicable statutory language became effective. *Sendak* v. *Planning & Zoning Commission*, supra, 7 Conn. App. 241. Thus, it did not apply to that case. Id., 243 n.1.

We note that the legislature, in enacting P.A. 84-227, § 1, was not addressing the Appellate Court's decision in *Sendak*, which was released approximately two years after the bill that became P.A. 84-227, § 1, was proposed. Rather, the legislature was addressing the policy issues that formed the basis of the Appellate Court's analysis of the issue presented in *Sendak*.

It recognizes both the legitimacy of settlement of zoning cases and the need for judicial scrutiny in order to avoid abuse of the process." Id.; see also *Levine* v. *Plan & Zoning Commission*, 25 Conn. App. 199, 203, 594 A.2d 9 (1991) ("the purpose of [the statutory language of § 8-8 (m)] is to ensure that zoning matters can be scrutinized by the public by means of a public record").

In the present appeal, Brookridge sought to appeal from the commission's decision to approve the settlement of Pathways' appeal and to enter into the proposed stipulated judgment. Brookridge argues on appeal that its underlying complaint contained allegations of fraud. Specifically, Brookridge alleged that Pathways deliberately had created a false impression in its presentation of the project to the commission and had employed "bait and switch" tactics that were misleading and improper.[9] Brookridge argues on appeal that these allegations of fraud are sufficient to satisfy the exception set forth in *Sendak*. We conclude, however, that allegations of fraud do not provide Brookridge with a right to appeal from the commission's decision to approve the settlement of Pathways' appeal by entering into a stipulated judgment. We conclude, instead, that the legislature, in enacting § 8-8 (m), recognized the need to protect parties from fraud, collusion or improper conduct, and, therefore, a hearing held pursuant to § 8-

---

[9] Brookridge made the following allegations in its complaint: "18. In approving the Stipulation the [c]ommission acted illegally, arbitrarily, capriciously and in abuse of the discretion vested in the [c]ommission in that . . .

"(d) Pathways' presentation of the Project as a convalescent home was intended to prevent the [c]ommission from realizing that Pathways claimed that the project was 'affordable housing' and therefore subject to the provisions of the [Affordable Housing Land Use Appeals] Act. The deliberately false impression created by Pathways' presentation of the Project prevented the [c]ommission from making the findings required by the Act in order to permit its decision to be upheld on appeal.

"19. The 'bait and switch' tactics employed by Pathways were misleading and improper, and impaired the integrity of the zoning process."

8 (m) is the proper forum for Brookridge to raise any allegations of fraud.

In *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 724 A.2d 1108 (1999), we noted that the legislative history of § 8-8 (m)[10] suggests that the statute was intended to protect the public interest in the settlement of land use appeals: "The legislative history of § 8-8 [(m)] reflects th[e] policy [of protecting the public interest]. It indicates that the requirement of court approval was designed to guard against surreptitious dealing between zoning boards and applicants, to avoid frivolous appeals initiated for leverage, and to ensure that settlements are fair." (Internal quotation marks omitted.) Id., 742 n.16, quoting 27 H.R. Proc., Pt. 10, 1984 Sess., pp. 3780–81, remarks of Representative Richard D. Tulisano. We therefore conclude that a hearing before the trial court held pursuant to § 8-8 (m) is the statutorily prescribed method for satisfying the public concerns raised by the settlement of land use appeals.[11]

We conclude that a planning commission's decision to settle a pending appeal by entering into a stipulated judgment is not a decision within the meaning of § 8-8 (b), and, therefore, an appeal to the Superior Court pursuant to § 8-8 (b) does not lie from that decision. Accordingly, the trial court properly dismissed Brookridge's appeal, brought pursuant to § 8-8 (b), from the

---

[10] In *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, supra, 247 Conn. 742 n.16, we discussed the legislative history of subsection (n) of General Statutes (Rev. to 1999) § 8-8. Because the legislature eliminated subsection (h) of § 8-8 in 2000; Public Acts 2000, No. 00-108, § 2; subsection (n) became subsection (m). Therefore, our discussion of the legislative history of subsection (n) of General Statutes (Rev. to 1999) § 8-8 in *Willimantic Car Wash, Inc.*, is relevant to our analysis of subsection (m) in the present case.

[11] In the present case, a § 8-8 (m) hearing has not yet occurred. The plaintiff appealed from the commission's decision to settle Pathways' appeal by entering into the proposed stipulated judgment prior to a § 8-8 (m) hearing.

commission's decision to approve the settlement of Pathways' underlying appeal and to enter into a stipulated judgment.

The judgment is affirmed.

In this opinion the other justices concurred.