# IN RE THOMAS J.*
## (AC 23301)

Foti, Dranginis and Freedman, Js.

Argued February 10—officially released May 27, 2003

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

1

*James J. Connolly*, supervisory assistant public defender, with whom, on the brief, was *Christine Perra Rapillo*, supervisory assistant public defender, for the appellant (respondent).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

FOTI, J. The respondent, Thomas J., appeals from the judgment rendered by the trial court denying his motion for review.[1] On appeal, the respondent claims

---

[1] The motion for review stated as follows: "The aforementioned respondent pursuant to the Connecticut General Statutes section 17a-16 (a) and (i), Article First, Sections Eight and Ten of the Constitution of the State of Connecticut and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, hereby moves this Honorable Court to review the Department of Children and Families investigation of reported abuse against the respondent.

"In support of this motion the respondent represents the following:

"(1) That on December 11, 2001, a Connecticut Juvenile Training School/ [department of children and families] employee contacted the D.C.F. Hotline to report that she witnessed an Agency Police Officer slamming the respondent's head into a glass wall.

"(2) That on December 12, 2001, James Funaro, an investigator with the Special Investigations Unit at D.C.F. began an investigation into the allegations.

that the court improperly interpreted General Statutes § 17a-16,[2] thereby depriving him of his right to due process.

"(3) That over the next 37 days, Mr. Funaro interviewed six individuals in connection with this case.

"(4) At the conclusion of the investigation, despite clear evidence to the contrary, Mr. Funaro did not substantiate that the respondent was abused by the Agency Police Officer.

"The respondent moves this Court to review the attached documents and reverse the Department's determination that the respondent was not abused by the Agency Police Officer."

[2] General Statutes § 17a-16, entitled "Rights of children and youths under the supervision of the Commissioner of Children and Families," provides:

"(a) No child or youth placed or treated under the direction of the Commissioner of Children and Families in any public or private facility shall be deprived of any personal, property or civil rights, except in accordance with due process of law.

"(b) Each child or youth placed or treated under the direction of the Commissioner of Children and Families in any public or private facility shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy, consistent with his treatment plan as determined by the commissioner.

"(c) (1) Each child and youth shall be permitted to communicate with any individual, group or agency, consistent with his treatment objectives as determined by the Commissioner of Children and Families.

"(2) Each public or private facility under the direction of the Commissioner of Children and Families shall furnish writing materials and postage to any child or youth desiring them.

"(3) A child or youth shall be permitted to make or receive telephone calls to or from his attorneys at any reasonable time. Public telephones shall be made available in appropriate locations.

"(d) (1) The Commissioner of Children and Families shall adopt regulations, in accordance with chapter 54, with respect to each facility or institution under his jurisdiction, to specify the following: (A) When a child or youth may be placed in restraint or seclusion or when force may be used upon a child or youth; (B) when the head of a facility may limit the use or receipt of mail by any child or youth and a procedure for return of unopened mail; and (C) when the head of a facility may restrict the use of a telephone by any child or youth.

"(2) A copy of any order placing a child or youth in restraint or seclusion in accordance with the regulations adopted in subdivision (1) of this subsection shall be made a part of the child's or youth's permanent clinical record. Any special restriction on the use or receipt of mail or telephone calls made in accordance with the regulations adopted in subdivision (1) of this subsection, shall be noted in writing, signed by the head of the facility, and made a part of the child's or youth's permanent clinical record.

The following facts underlie the respondent's appeal. The respondent, having been adjudicated a delinquent child, was committed to the custody of the commissioner of the department of children and families (department) and placed at Long Lane School on March 28, 2001. In October, 2001, he was transferred to the Connecticut Juvenile Training School. In December, 2001, the department's special investigation unit began investigating an allegation that a department police officer had slammed the respondent's head into a glass wall.[3] On January 22, 2002, the department found that the claim was unsubstantiated. On June 28, 2002, the respondent filed his motion for review, which the court denied on July 8, 2002.[4]

---

"(e) (1) Each child or youth shall be permitted to receive visitors subject to reasonable restrictions consistent with the child's or youth's treatment objectives. The head of each facility shall establish visiting hours and inform all children and youth and their families and other visitors of these hours. Any special restriction shall be noted in writing, signed by the head of the facility, and made a part of the child's or youth's permanent clinical record.

"(2) Each child or youth may receive his clergyman and attorney at any reasonable time.

"(f) No person shall be denied employment, housing, civil service rank, any license or permit, including a professional license, or any other civil or legal right, solely because of a present or past placement with the Commissioner of Children and Families except as otherwise provided by statute.

"(g) Each child or youth under the supervision of the Commissioner of Children and Families shall have the right to counsel of his own choosing, and the right to receive visits from physicians and mental health professionals as may be arranged by his counsel.

"(h) Each child or youth shall have a right to a hearing pursuant to procedures adopted by the commissioner, in accordance with sections 4-176e to 4-181a, inclusive, before he is involuntarily transferred by the Commissioner of Children and Families to any facility outside the state of Connecticut.

"(i) Any child or youth aggrieved by a violation of subsections (a) to (h), inclusive, of this section, may petition the superior court for the venue district provided in section 46b-142 within which the child or youth is or resides for appropriate relief, including temporary and permanent injunctive relief. Such petition shall be treated as a juvenile matter."

[3] We note that the propriety of the department, in effect, investigating itself against an allegation of that nature, is not an issue before us.

[4] In denying the motion, the court concluded: "This isn't the appropriate vehicle. This motion is not the appropriate vehicle to address any deprivation

The sole issue to be determined in this appeal is whether the court properly denied the motion for review in that it lacked statutory authority either to adjudicate or to provide the relief sought pursuant to § 17a-16.[5]

There is no dispute that § 17a-16 sets forth the rights of children who are under the supervision of the commissioner of the department and allows an aggrieved child whose rights are violated to petition the Superior Court for appropriate relief, including injunctive relief, and that the petition must be treated as a juvenile matter. What is in question is whether the "motion for review" that was filed in this matter is such a "petition" as is authorized under § 17a-16 (i). We conclude that it is not.

As a preliminary matter, we set forth our standard of review. Because the claim involves one of statutory authority and raises a question of law requiring our interpretation of § 17a-16, our review is plenary. See *State* v. *Dash*, 242 Conn. 143, 146–47, 698 A.2d 297 (1997). Our duty, when the legal conclusions of the court are challenged, is to determine whether those conclusions are legally and logically correct and find support in the facts appearing in the record. *Ford* v. *Ford*, 68 Conn. App. 173, 177, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002).

Our review of § 17a-16 leads us to conclude that its language is clear and unambiguous.[6] That being so, we

of [the respondent's] rights or injury that he suffered and that he should pursue his civil remedies . . . ."

[5] The respondent, who was sixteen years of age at the time that he filed the motion, is no longer in the custody of the commissioner of the department. We do not, however, consider the appeal moot, as practical relief can be provided the respondent; a reversal of the department's determination may be of some consequence in a successful civil action resulting in monetary damages.

[6] "[W]e will . . . in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratexual sources of its meaning,

do not construe the statute by looking to its history or purpose; "we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). "[The] legislative intent is to be determined by an analysis of the language actually used in the legislation"; *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 391, 618 A.2d 1340 (1993); it is found not in what the legislature perhaps meant to say, "but in the meaning of what it did say." *Dana-Robin Corp.* v. *Common Council*, 166 Conn. 207, 221, 348 A.2d 560 (1974). Further, in considering statutory construction including legislative intent, we must recognize that "the legislature is presumed to have intended a reasonable, just and constitutional result." *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 187, 592 A.2d 912 (1991).

A Juvenile Court is not precluded from exercising its authority under § 17a-16 to entertain a petition from an aggrieved child or youth. Such exercise of authority may include issuing orders that impose injunctive or other appropriate relief to protect such child or youth from harm while under state supervision. Such a court, however, must act under the authority of the statute, which is preconditioned on the filing of a petition by the aggrieved child and the setting forth of a claim of a violation of subsections (a) to (h) of § 17a-16.

The respondent argues that his motion for review is a petition, as required under § 17a-16. We do not agree. The motion for review was not made under oath,[7] did

---

appears to be *the* meaning and that appears to preclude any other likely meaning." (Emphasis in original.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003) (en banc).

[7] Practice Book (1998) § 26-1 (*l*), now (j), defines "petition" in juvenile matters as follows: " 'Petition' means a formal pleading, *executed under oath* alleging that the respondent is within the court's authority to adjudicate the matter which is the subject of the petition by reason of cited statutory

not invoke a judicial hearing and sought relief not contemplated under the statute. The filing of the motion did not allow interested parties, i.e., the department and the employee accused of abuse, to participate, by providing notice and the opportunity to appear, as would a petition filed properly under § 17a-16. The respondent sought to have the court review certain documents "and reverse the Department's determination that the respondent was not abused by [a department] Police Officer." See footnote 1. No evidentiary or adversarial type of hearing was requested or required, as the matter was presented to the trial court.[8] The motion was, in effect, an appeal from an agency's determination and sought a reversal of that determination in an almost ex parte fashion.[9] It also

provisions and seeking a disposition. . . . [S]uch petitions invoke a judicial hearing . . . ." (Emphasis added.)

[8] At the hearing on the motion, the respondent's counsel, in requesting a limited judicial record of review of the department's decision, stated: "We certainly don't expect the court to begin from the beginning in interviewing witnesses, and I don't think any of that is necessary. I think everything that the court needs is provided in the documents that I submitted with the motion. I think it's clear because the report identifies the witnesses, their statements, what they complained happened, and I would ask [the court] to review those documents and, I guess, reverse the department's position."

[9] " 'There is no absolute right of appeal to the courts from a decision of an administrative agency.' *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 699, 620 A.2d 780 (1993); accord *Fairfield* v. *Connecticut Siting Council*, 238 Conn. 361, 368, 679 A.2d 354 (1996). 'Appeals to the courts from administrative [agencies] exist only under statutory authority . . . .' *Tazza* v. *Planning & Zoning Commission*, 164 Conn. 187, 190, 319 A.2d 393 (1972); accord *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 234 Conn. 624, 640, 662 A.2d 1251 (1995); *Charles Holdings, Ltd.* v. *Planning & Zoning Board of Appeals*, 208 Conn. 476, 479, 544 A.2d 633 (1988). 'Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed.' . . . *Charles Holdings, Ltd.* v. *Planning & Zoning Board of Appeals*, supra, 479; see also *Connecticut Resources Recovery Authority* v. *Commissioner of Environmental Protection*, 233 Conn. 486, 498, 659 A.2d 714 (1995) ('The right of appeal [from the decision of an administrative agency] is purely statutory. It is accorded only if the conditions fixed by . . . statute . . . are met.' . . . )." *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611–12, 793 A.2d 215 (2002).

sought to have the court substitute its judgment for that of the agency on the basis of that limited review.

Having reached this point in our analysis, we now consider whether the court properly declined to grant the respondent the relief he sought. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999). The issues in this case do not raise any claim with respect to the court's subject matter jurisdiction. We note, nonetheless, that the court did not lack subject matter jurisdiction. Rather, we conclude that the court lacked the authority to act under the statute; it could neither appropriately review the department's decision nor grant the relief sought in the respondent's motion. If the court, acting on the present motion for review, had granted relief under the authority conferred on it by § 17a-16, it would have applied an incorrect rule of law to the situation. It would not have acted "without jurisdiction, but in the erroneous exercise of its jurisdiction." *Artman* v. *Artman*, 111 Conn. 124, 130, 149 A. 246 (1930). The court lacked authority to entertain the motion for review pursuant to § 17a-16.[10]

The form of the judgment is improper, the order denying the motion for review is reversed and the case is remanded with direction to render judgment dismissing the motion.

In this opinion the other judges concurred.

---

[10] Because the court lacked the authority to consider the respondent's motion under our rules of practice, the court properly should have dismissed, rather than have denied, the motion for review. Cf. *State* v. *Rogelstad*, 73 Conn. App. 17, 37, 806 A.2d 1089 (2002).